IN THE MATTER OF: MICHAEL CHARLES HAYES, Respondent

No. COA08-894

(Filed 18 August 2009)

**1. Appeal and Error— preservation of issues—public interest—dispositions available at recommitment hearing— Rule 2**

The issue of whether a conditional release was a possible disposition at a recommitment hearing for an inmate involuntarily committed following an insanity verdict was addressed by the Court of Appeals under Appellate Rule 2 despite not being properly preserved for review. The question will arise in every recommitment hearing of a person found not guilty by reason of insanity, and the question of dispositions available to the trial court is critical to the protection of the public's safety and the respondent's rights.

**2. Mental Illness— recommitment hearing—conditional release—available disposition**

A trial court has authority following a hearing under N.C.G.S. §§ 122C-268.1 and -276.1 to order a conditional release of an insanity acquittee. In this case, it was apparent that the trial court's assumption that it had no authority to award a conditional

release played a fundamental role in its decision, and the commitment order was reversed and remanded for a hearing *de novo*.

Appeal by respondent from order entered 1 October 2007 by Judge Steve A. Balog in Forsyth County Superior Court. Heard in the Court of Appeals 29 January 2009.

*Attorney General Roy Cooper, by Assistant Attorney General Diane Martin Pomper, for the State.*

*Appellate Defender Staples Hughes, by Assistant Appellate Defender Benjamin Dowling-Sendor, for respondent-appellant.*

GEER, Judge.

Respondent Michael Charles Hayes was found not guilty by reason of insanity following a murder trial. Pursuant to N.C. Gen. Stat. § 15A-1321(b) (2007), he was involuntarily committed to a state mental health facility. Since then, the trial courts have recommitted him following each recommitment hearing. In this appeal, he challenges the trial court's 1 October 2007 order again recommitting him to involuntary inpatient treatment for a period not to exceed 365 days. He argues (1) that the trial court erred in failing to consider a conditional release as a dispositional option and (2) that the evidence did not support the trial court's findings of fact and conclusions of law that respondent failed to prove he was no longer dangerous to others as defined by North Carolina law.

It is apparent from the record that the trial court believed its only options following the hearing were either to recommit Hayes to Dorothea Dix Hospital or to unconditionally release him. Because the trial court was unaware that it had the option of conditionally releasing Hayes, it made its findings of fact and conclusions of law under a misapprehension of the law. We, therefore, reverse the 1 October 2007 order and remand for reconsideration in light of the availability of a conditional release as a potential disposition.

## Facts

In 1988, Hayes was charged with four counts of first degree murder, five counts of felonious assault with a deadly weapon, and two counts of assault on a law enforcement officer. Hayes was found not guilty by reason of insanity of all the charges and was involuntarily committed to a state mental health facility pursuant to N.C. Gen. Stat.

§ 15A-1321(b). Since his initial commitment, Hayes has had annual recommitment hearings under N.C. Gen. Stat. § 122C-276.1 (2007). Each time, the trial court has ordered Hayes' recommitment. Hayes has appealed several of the recommitment orders, all of which were upheld by this Court. *See In re Hayes*, 111 N.C. App. 384, 432 S.E.2d 862, *appeal dismissed*, 335 N.C. 173, 436 S.E.2d 376 (1993); *In re Hayes*, 139 N.C. App. 114, 532 S.E.2d 553 (2000); *In re Hayes*, 151 N.C. App. 27, 564 S.E.2d 305, *appeal dismissed and disc. review denied*, 356 N.C. 613, 574 S.E.2d 680 (2002). Prior to the hearing giving rise to this appeal, Hayes' last contested recommitment hearing was in January 2001.

On 11 September 2007, Hayes' treating physician at Dorothea Dix Hospital, Dr. Reem Utterback, filed with the clerk of superior court a Request for Hearing, stating that a recommitment hearing needed to be scheduled. The request form required Dr. Utterback to specify the reason the hearing was necessary, including whether it was to "determine the appropriateness" of Hayes' "Continued inpatient treatment," "Outpatient treatment," "Discharge," or "Conditional release." Dr. Utterback indicated on the form that the rehearing was to determine the appropriateness of Hayes' discharge.

In the Examination and Recommendation form attached to the hearing request, Dr. Utterback reported that Hayes "has progressed through the forensic program and currently has extensive off grounds privileges, which include full time work, AA/NA and family visits." Dr. Utterback also noted that Hayes has "been living in the independent living program without any problems or difficulties"; that "[h]e has had no symptoms of mental illness for many years and is on no psychotropic medications"; and that "[h]e presents as well groomed, alert, oriented, cooperative, pleasant [with] no signs of aggressive violence."

The recommitment hearing requested by Dr. Utterback was held on 17 September 2007, and numerous mental health professionals testified. At the 2001 hearing, six years earlier, the court-appointed independent expert, Dr. Jonathan J. Weiner, expressed his view that Hayes was still mentally ill and dangerous. In the 2007 hearing, however, Dr. Weiner explained that because of Hayes' progress since 2001, he has now concluded that Hayes is not mentally ill under North Carolina law and that "there is not a reasonable probability that the conduct which resulted in his being committed almost 20 years ago would be repeated[.]" Dr. Weiner emphasized Hayes' full-time employment for three years, his active participation in Alcoholics

Anonymous, and his 13 years of sobriety. He believes that the risk of Hayes' relapsing into alcohol dependence is "very, very small" and has concluded that Hayes not only no longer needs inpatient commitment, but that it is no longer therapeutically sound to keep Hayes in Dorothea Dix Hospital as an inpatient.

Dr. Peter Barboriak, the medical director of forensic psychology services at Dorothea Dix Hospital, and Dr. Mark Hazelrigg, chief forensic psychologist at the Hospital, each expressed his medical opinion that Hayes did not meet the legal definitions of being mentally ill or dangerous to others. Dr. Barboriak, who treated Hayes from March 2007 to June 2007, testified that, in his opinion, Hayes does not need to be hospitalized and should be discharged. He does not believe that Hayes shows any sign of active mental illness. Dr. Hazelrigg noted that, as a result of a 2006 consent order setting out Hayes' off-campus privileges, Hayes currently spends more time away from Dorothea Dix Hospital than in the Hospital. Although Dr. Hazelrigg acknowledged that if Hayes resumed using drugs and alcohol, he could have another psychotic episode, he emphasized that Hayes does not have a risk of violence except in the context of substance abuse-induced psychosis, and substance abuse is unlikely to recur given Hayes' demonstrated commitment to staying drug- and alcohol-free.

Dr. Charles Vance, who treated Hayes from 2001 to 2007, and Dr. Utterback, Hayes' current treating physician, both of Dorothea Dix Hospital, agreed that Hayes is neither mentally ill nor dangerous to others under North Carolina law. Dr. Vance reported that no clinician at Dorothea Dix Hospital considers Hayes to be mentally ill any longer. Although he recognized that Hayes' risk for violent conduct is greater than that of an average person, he stressed that it is "a very, very small risk such that I feel comfortable saying he does not pose a substantial risk to the health and safety of others." Edwin D. Munt, who had provided therapy to Hayes at Dorothea Dix Hospital from December 1992 to August 2004, explained that he had ended therapy treatment with Hayes in 2004 because, in his opinion, Hayes was no longer mentally ill. Munt also testified that he does not believe that there is a reasonable probability that Hayes would repeat his violent behavior in the future.

In addition, Hayes presented the testimony of two forensic psychiatrists and a forensic psychologist from outside of Dorothea Dix Hospital who had evaluated Hayes over a substantial period of time. Dr. Seymour Halleck has been involved in Hayes' treatment since

IN RE HAYES

[199 N.C. App. 69 (2009)]

1991. He testified that, in his medical opinion, Hayes is not mentally ill and that there is not a reasonable probability that he is dangerous to others. He acknowledged that there is a risk that Hayes could become psychotic and violent if he abuses substances in the future, but that the risk is small in light of nearly 19 years free of psychosis. Dr. James Bellard explained that he has worked with Hayes on a pro bono basis since 1996. Dr. Bellard testified that based on his decade-long involvement in Hayes' case, he does not believe that Hayes is currently mentally ill. Although he admits there is some risk that Hayes could return to substance abuse and some risk for violence if he becomes psychotic again, he believes the risk that Hayes would be dangerous to others is "extremely low." Hayes' final witness, clinical psychologist Dr. Christopher Norris, agreed with each of the other medical experts that Hayes "does not suffer from any mental illness as determined by North Carolina law" and is not dangerous to others. He testified that there is a risk that a return to substance abuse could lead to a psychotic break in the future, but that the risk of Hayes' relapse into substance abuse is low.

The State presented the testimony of one expert witness, Dr. Robert S. Brown, Jr., a forensic psychiatrist from Virginia. Dr. Brown testified that, in his medical opinion, Hayes is mentally ill with diagnoses of personality disorder not otherwise specified with narcissistic features, substance dependence, and sleep apnea. When asked if he had an opinion whether "Mr. Hayes has any risk for future violence should he be released from the hospital[,]" Dr. Brown stated that the risk was "small or slight." Dr. Brown, however, believes that even a slight risk is unacceptable. Although Dr. Brown does not think Hayes should be unconditionally released from Dix Hospital, he added: "I'm just suggesting that a successful 19-year stay at Dorothea Dix, if it's any way possible, can be concluded with a rational and safe and appropriate discharge plan, that's what I'm in favor of." He explained further: "[H]e's made progress at Dorothea Dix and I think he needs a discharge plan that contains some reasonable supervision in it to help guarantee success in—in the discharge."

In an order entered 1 October 2007, the trial court found, with respect to the issue of mental illness, that Hayes met the criteria for being diagnosed with the mental disorders of "[p]olysubstance [d]ependance" and "[p]ersonality [d]isorder NOS [Not Otherwise Specified], with antisocial and narcissistic traits." The trial court further determined that "these mental disorders so lessen the capacity of Michael Charles Hayes to use self-control, judgment and discretion in

the conduct of his affairs and social relations as to make it necessary or advisable for him to be under treatment, care, supervision, guidance or control and thus, they constitute mental illnesses as defined by G.S. 122C-3(21)."

On the issue of dangerousness, the trial court found:

The four homicides and seven felonious assaults committed by the respondent on July 27, 1988, are episodes of dangerousness to others in the relevant past which in combination with his past and present mental condition, his multiple mental illnesses and his conduct since admission to Dorothea Dix Hospital since 1989 and up to and including his conduct in the hospital during the previous years indicated there is a reasonable probability that the respondent's seriously violent conduct will be repeated and that he will be dangerous to others in the future *if unconditionally released with no supervision at this time.* There is a reasonable probability that if the respondent were released today he may relapse into his previous pattern of multi-substance abuse/dependence and relapse into a situation repeating his exposure to the same ordinary life stressors at least as serious as, if not more so, than those which were present in 1988 at the time of the killings. Should these kinds of relapses occur, the respondent will run the risk of future violent behavior.

(Emphasis added.)

Based on these findings, the trial court ultimately concluded that Hayes had failed to prove by a preponderance of the evidence that he is no longer mentally ill or dangerous to others and, therefore, had "failed to bear his burden of proof that he meets either criteria for release under N.C.G.S. 122C-276.1." The trial court recommitted Hayes to inpatient treatment for a period of 365 days. Hayes timely appealed to this Court.

## Discussion

Pursuant to N.C. Gen. Stat. § 15A-1321(b), when a defendant is found not guilty by reason of insanity, "the presiding judge shall enter an order finding that the defendant has been found not guilty by reason of insanity of a crime and committing the defendant to a Forensic Unit operated by the Department of Health and Human Services, where the defendant shall reside until the defendant's release in accordance with Chapter 122C of the General Statutes." N.C. Gen. Stat. § 122C-268.1(a) (2007) provides for a commitment hearing

IN RE HAYES

[199 N.C. App. 69 (2009)]

within 50 days of the initial commitment. At that hearing, under § 122C-268.1(i), the respondent may be recommitted for a subsequent period of 90 days. At the end of the 90-day period, the respondent may be recommitted for an additional 180-day period under N.C. Gen. Stat. § 122C-276.1(c). After that, N.C. Gen. Stat. § 122C-276.1(d) provides for annual commitment hearings.

N.C. Gen. Stat. § 122C-268.1(i) sets out the standard governing the trial court's review for the first hearing:

> The respondent shall bear the burden to prove by a preponderance of the evidence that he (i) no longer has a mental illness as defined in G.S. 122C-3(21), or (ii) is no longer dangerous to others as defined in G.S. 122C-3(11)b. If the court is so satisfied, then the court shall order the respondent discharged and released. If the court finds that the respondent has not met his burden of proof, then the court shall order that inpatient commitment continue at a 24-hour facility designated pursuant to G.S. 122C-252 for a period not to exceed 90 days. The court shall make a written record of the facts that support its findings.

The standard is the same for the second hearing, N.C. Gen. Stat. § 122C-276.1(c), and for any subsequent hearing, N.C. Gen. Stat. § 122C-276.1(d).

[1] Hayes first argues on appeal that Chapter 122C provides for three possible dispositions at recommitment hearings. According to Hayes, the trial court is authorized: "(1) to order the recommitment of a respondent to inpatient hospitalization, (2) to order the unconditional release of a respondent, or (3) to order the conditional release of a respondent." The State contends, as a threshold matter, that Hayes failed to present his argument regarding conditional release in the trial court and, therefore, waived appellate review of the issue.

Rule 10 of the Rules of Appellate Procedure "provides that '[i]n order to preserve a question for appellate review, a party must have presented to the trial court a timely request, objection or motion, stating the specific grounds for the ruling the party desired the court to make.' " *Dogwood Dev. & Mgmt. Co. v. White Oak Transp. Co.*, 362 N.C. 191, 195, 657 S.E.2d 361, 363 (2008) (quoting N.C.R. App. P. 10(b)(1)). Review of the record reveals that Hayes failed to present any argument to the trial court that conditional release is a dispositional alternative under N.C. Gen. Stat. § 122C-276.1.

Although Hayes' counsel asked several of the mental health professionals testifying at the hearing about the potential benefits of a "transitional program" or "conditional release" for Hayes, counsel also argued to the trial court that "it's an either or decision" regarding unconditional release or recommitment. Without presenting a distinct argument to the trial court that a conditional release was a possible disposition, Hayes failed to properly preserve the issue for appellate review.

In cases where a party has failed to preserve an argument for appellate review, "Rule 2 permits the appellate courts to excuse a party's default . . . when necessary to 'prevent manifest injustice to a party' or to 'expedite decision in the public interest.' " *Dogwood*, 362 N.C. at 196, 657 S.E.2d at 364 (quoting N.C.R. App. P. 2). In this case, all the parties and the trial court assumed at the hearing that the case presented an "either/or" proposition—Hayes would be either recommitted or unconditionally released. *See Potter v. Homestead Pres. Ass'n*, 330 N.C. 569, 576, 412 S.E.2d 1, 5 (1992) (electing to suspend appellate rules under Rule 2 to consider plaintiff's dismissed claim where record reflected parties and trial court operated under "erroneous[] assum[ption]" regarding statute of limitations).

The prejudice of the parties' assumption to the proceedings in this case is readily apparent from a review of the testimony (including the expert testimony presented by the State that must have formed the basis for the trial court's order), the State's closing argument, and the trial court's order itself. Significantly, the State's only expert witness candidly explained that a conditional release—a release with a discharge plan—is "what I'm in favor of." The State, however, argued in closing:

> And as the Court is aware, *if you release him, you have to release him unconditionally.* He can go wherever he wants, he can do whatever he wants, he can associate with whomever he'd like to, he can go to AA meetings or not go to AA meetings. *There's no way for the Court or society to have any checks or balances on him with regard to what he does.*
>
> If you release him, I submit based on the situation that he has created for himself, he's essentially walking into a—and that stressful environment has simply created too much of a risk that he might start down that slippery slope. And once he starts down, increasing his—at abusing substances again, it's a risk that I submit to you that this community should not have to bear

based in part or in large part on the extremely violent and homi-
cidal conduct that he has already exhibited he is capable of by
abusing substances.

(Emphasis added.) The prejudicial effect of the assumption then
manifests itself in the trial court's finding that "there is a reasonable
probability that the respondent's seriously violent conduct will be
repeated and that he will be dangerous to others in the future *if
unconditionally released with no supervision* at this time."
(Emphasis added.)

Thus, the assumption that the only alternative to recommitment
was an unconditional release was a fundamental aspect of the State's
argument for continued inpatient commitment and a critical compo-
nent of the trial court's order. Indeed, if a conditional release were a
lawful disposition, the impact of the State's sole expert's testimony
could be very different since his testimony can be read as endorsing
a conditional release over recommitment. In our discretion, we
believe it is necessary to address this issue to prevent manifest injus-
tice to Hayes.

Moreover, an appellate court may elect, in its discretion under
Rule 2, to address important issues that frequently arise in order to
expedite decision in the public interest. *Blumenthal v. Lynch*, 315
N.C. 571, 578, 340 S.E.2d 358, 362 (1986) ("[O]n rare occasions, when
. . . issues of importance which are frequently presented to state agen-
cies and the courts require a decision in the public interest, this Court
will exercise its inherent residual power or its authority under Rule 2
of the North Carolina Rules of Appellate Procedure and address those
issues though they are not properly raised on appeal.").

The issue presented by this appeal will arise in every recommit-
ment hearing of a person who has been committed by virtue of hav-
ing been found not guilty by reason of insanity. The question of the
dispositions available to a trial court is critical to the protection of
the public's safety and the protection of the respondent's rights. As
then Justice Sharp reminded us in *In re Tew*, 280 N.C. 612, 618, 187
S.E.2d 13, 17 (1972) (internal quotation marks and citations omitted):

A verdict of not guilty due to insanity constitutes a full acquit-
tal, and one thus acquitted is entitled to all the protection and
constitutional rights as if acquitted upon any other ground. . . .
The commitment of such a person following an acquittal is
imposed for the protection of society and the individual con-

fined—not as punishment for crime. He can be confined in an asylum *only* until his mental health is restored when he will be entitled to his release, like any other insane person.

The need for resolution of this significant issue is well demonstrated by Hayes' case: this issue will recur every year at his recommitment hearing. It is in the public's interest that this issue be resolved now.

**[2]** On the merits of the issue, Hayes contends that even though neither N.C. Gen. Stat. § 122C-268.1(i) nor N.C. Gen. Stat. § 122C-276.1(c) explicitly authorize a conditional release, other provisions in Chapter 122C contemplate a conditional release as a dispositional option. Hayes argues that construing these statutes *in pari materia* leads to the conclusion that a trial court is authorized to order a conditional release in § 122C-268.1 and § 122C-276.1 hearings. The State, on the other hand, maintains that the language in N.C. Gen. Stat. §§ 122C-268.1(i) and -276.1(c) provides for only two dispositional alternatives—commitment or unconditional release—and, therefore, the trial court's authority is necessarily limited to those two options.

Significantly, both N.C. Gen. Stat. § 122C-268.1(i) and N.C. Gen. Stat. § 122C-276.1(c) refer to a respondent being *"discharged* and *released."* (Emphasis added.) A fundamental principle of statutory interpretation is that "a statute must be construed, if possible, so as to give effect to every part of it, it being presumed that the Legislature did not intend any of its provisions to be surplusage." *State v. Williams*, 286 N.C. 422, 431, 212 S.E.2d 113, 119 (1975). If, as the State argues, the General Assembly had intended that the trial court have only the options of discharge or recommitment, the word "released" would be synonymous with the word "discharged" and would be a mere redundancy.

Under traditional statutory construction principles, some meaning—independent of that ascribed to "discharge"—must be given to the word "release." *See Jackson v. Guilford County Bd. of Adjustment*, 275 N.C. 155, 167, 166 S.E.2d 78, 86 (1969) (holding that where statute or ordinance contains multiple terms or requirements, it is presumed that "none of them is a mere repetition of the others"); *State v. Ward*, 31 N.C. App. 104, 106, 228 S.E.2d 490, 491 (1976) ("It is presumed that no meaningless or useless words or provisions are used in a statute, but that each word or provision is to be given some effect.").

"The primary rule of construction . . . is to ascertain the intent of the legislature and to carry out such intention to the fullest ex-

tent." *Burgess v. Your House of Raleigh, Inc.*, 326 N.C. 205, 209, 388 S.E.2d 134, 137 (1990). To effectuate that intent, "[s]tatutes dealing with the same subject matter must be construed *in pari materia* and harmonized, if possible, to give effect to each." *Bd. of Adjustment of the Town of Swansboro v. Town of Swansboro*, 334 N.C. 421, 427, 432 S.E.2d 310, 313 (1993). *Accord Redevelopment Comm'n of Greensboro v. Sec. Nat'l Bank of Greensboro*, 252 N.C. 595, 610, 114 S.E.2d 688, 698 (1960) ("It is a fundamental rule of statutory construction that sections and acts *in pari materia*, and all parts thereof, should be construed together and compared with each other."). Words and phrases of a statute are to be construed as a part of the composite whole and accorded only that meaning which other modifying provisions and the clear intent and purpose of the statute permits. *Underwood v. Howland*, 274 N.C. 473, 479, 164 S.E.2d 2, 7 (1968).

Chapter 122C of the General Statutes codifies the Mental Health, Developmental Disabilities, and Substance Abuse Act of 1985. Within Chapter 122C is Article 5, which outlines the "Procedures for Admission and Discharge of Clients." Article 5 includes Part 7, entitled "Involuntary Commitment of the Mentally Ill; Facilities for the Mentally Ill." Part 7 includes not only N.C. Gen. Stat. § 122C-268.1 and § 122C-276.1, but also N.C. Gen. Stat. § 122C-277 (2007), entitled "Release and conditional release; judicial review."

Pertinent to this case, N.C. Gen. Stat. § 122C-277 provides:

(a) Except as provided in subsections (b) and (b1) of this section, the attending physician shall discharge a committed respondent unconditionally at any time he determines that the respondent is no longer in need of inpatient commitment. However, if the attending physician determines that the respondent meets the criteria for outpatient commitment as defined in G.S. 122C-263(d)(1), he may request the clerk to calendar a supplemental hearing to determine whether an outpatient commitment order shall be issued. Except as provided in subsections (b) and (b1) of this section, *the attending physician may also release a respondent conditionally* for periods not in excess of 30 days on specified medically appropriate conditions. . . .

. . . .

(b1) If the respondent was initially committed pursuant to G.S. 15A-1321, 15 days before the respondent's discharge or *con-*

*ditional release* the attending physician shall notify the clerk of superior court. The clerk shall calendar a hearing and shall give notice as provided by G.S. 122C-264(d1). . . . The hearing shall be conducted under the standards and procedures set forth in G.S. 122C-268.1. Provided, that in no event shall discharge or *conditional release* under this section be allowed for a respondent during the period from automatic commitment to hearing under G.S. 122C-268.1.

N.C. Gen. Stat. § 122C-277(a) and (b1) (emphasis added).

The plain language in N.C. Gen. Stat. § 122C-277 indicates that the General Assembly intended conditional release as a dispositional option in the insanity acquittee involuntary commitment context. Even the State acknowledges that the trial court has authority to order a conditional release under § 122C-277. As the broad language indicates, the only time conditional release is not an option in judicial review proceedings is during the 50-day period between the automatic commitment pursuant to N.C. Gen. Stat. § 15A-1321 and the initial hearing under N.C. Gen. Stat. § 122C-268.1.

Construing N.C. Gen. Stat. §§ 122C-268.1, -276.1, and -277 *in pari materia,* it is reasonable to read these statutes as providing the same dispositional alternatives—recommitment, discharge, or conditional release—regardless whether the hearing was initiated by a respondent's treating physician or whether it was automatically calendared pursuant to a statutory mandate. The State has presented no logical rationale for its position that the trial court's authority to order a conditional release is limited to those instances when a physician intends to conditionally release an insanity acquittee. The more reasonable construction of the statute is that if a trial court may order a conditional release when requested by a treating physician, then the trial court itself has commensurate authority under N.C. Gen. Stat. §§ 122C-268.1 and -276.1 to order a conditional release in an automatically calendared proceeding.

The procedure in this case demonstrates the irrationality of construing the statutes to grant the trial court authority to order a conditional release if a treating physician requests a hearing under N.C. Gen. Stat. § 122C-277—as Dr. Utterback did here—but to deprive the trial court of the authority to do so if the hearing is deemed not to be initiated by the treating physician, as the State apparently assumes to be the case here. Consistent with N.C. Gen. Stat. § 122C-277, Hayes' treating physician submitted a Request for Hearing to obtain an or-

der regarding the discharge of Hayes.[1] Nonetheless, the parties all have treated this hearing as if it were an automatic one not initiated by the treating physician, with the result, according to the State, that the trial court could only recommit or unconditionally release Hayes. We do not believe the General Assembly intended such a curious result—that the trial court's dispositional authority could be defined by the label placed on the hearing by the parties.

The Legislature's intent to provide for conditional release as an option in § 122C-268.1 or § 122C-276.1 hearings is further evidenced by the notice provisions set out in N.C. Gen. Stat. § 122C-264(d1) (2007):

> For hearings and rehearings pursuant to G.S. 122C-268.1 and G.S. 122C-276.1, the clerk of superior court shall calendar the hearing or rehearing and shall notify the respondent, his counsel, counsel for the State, and the district attorney involved in the original trial. . . . Upon receipt of the notice, the district attorney shall notify any persons he deems appropriate, including anyone who has filed with his office a written request for notification of any hearing or rehearing concerning discharge or *conditional release* of a respondent.

(Emphasis added.) Notably, no other hearing pursuant to any other statute is mentioned in § 122C-264(d1)—§ 122C-268.1 and § 122C-276.1 hearings are the sole subjects of the statute.

The plain language of this statute requires that notice of § 122C-268.1 and -276.1 hearings be given to anyone who has requested notice of a hearing "concerning discharge or conditional release." N.C. Gen. Stat. § 122C-264(d1). Thus, the statute recognizes that hearings under § 122C-268.1 and -276.1 are hearings that may involve a conditional release. If, as the State urges, a conditional release is not an option in these hearings, then the General Assembly did not need to reference a conditional release in § 122C-264(d1). The State's interpretation cannot be reconciled with longstanding prin-

---

1. The fact that Hayes' treating physician checked the box next to "[d]ischarge" should not necessarily mean that a conditional release is not available under § 122C-277. As Hayes' doctor's testimony reveals, she selected this option because, in her medical opinion, Hayes is neither mentally ill nor dangerous to himself or others as defined by North Carolina law, and, therefore, should be unconditionally discharged. The trial court, in this case, was, however, unpersuaded by Hayes' treating physician's testimony. We are unwilling to hold that a trial court's statutory authority to order the disposition it believes supported by the evidence can be limited by a doctor's completion of a form.

ciples of statutory construction. *See State v. Harvey*, 281 N.C. 1, 19-20, 187 S.E.2d 706, 718 (1972) ("In seeking to discover and give effect to the legislative intent, an act must be considered as a whole, and none of its provisions shall be deemed useless or redundant if they can reasonably be considered as adding something to the act which is in harmony with its purpose.").

In sum, construing § 122C-264(d1) and § 122C-277(b1) as part of a comprehensive whole with § 122C-268.1 and § 122C-276.1, we do not believe that the General Assembly intended to grant a trial court authority to order a conditional release only if the commitment proceeding was initiated by a treating physician under § 122C-277(b1) and intended to deprive the trial court of authority to order a conditional release when the hearing automatically came up under § 122C-268.1 or § 122C-276.1. In addition, § 122C-264(d1)—the notice statute—specifically references § 122C-268.1 and § 122C-276.1 hearings and indicates that they are hearings "concerning discharge or conditional release of a respondent." N.C. Gen. Stat. § 122C-264(d1). We conclude that N.C. Gen. Stat. §§ 122C-264, -268.1, -276.1, and -277—read *in pari materia*—establish the trial court's authority to order a conditional release as a dispositional option in § 122C-268.1 and § 122C-276.1 hearings.

The Supreme Court's decision in *Tew* supports our conclusion. In *Tew*, 280 N.C. at 618-19, 187 S.E.2d at 18, the Supreme Court held that N.C. Gen. Stat. § 122-86 (1964) ("Persons acquitted of crime on account of mental illness; how discharged from hospital.")—a precursor to N.C. Gen. Stat. §§ 122C-268.1 and -276.1—did not comport with due process because it required an insanity acquittee's release to be certified by the superintendents of the state's mental facilities. The Court held that the certification requirement unconstitutionally "circumscribed" the trial court's authority to discharge an insanity acquittee. *Tew*, 280 N.C. at 619, 187 S.E.2d at 18.

In remanding the case to the trial court for a trial de novo, the Court stressed: "[W]e perceive no legal reason why [the petitioner] could not be granted a conditional probationary release if his mental condition be found to justify it. *See* G.S. § 122-67 (1964)." *Id.* at 621, 187 S.E.2d at 19. Like the current statute, N.C. Gen. Stat. § 122-67 (1964) did not specifically authorize the trial court to order a conditional release, although it did authorize the superintendent of the hospital at which an insanity acquittee was confined to "release [an insanity acquittee] on probation" if "suitable provision[s] c[ould] be

made . . . ." If, in *Tew*, N.C. Gen. Stat. § 122-67 permitted the trial court to order conditional release, although not explicitly authorizing the court to do so, we see no reason that the same conclusion should not arise with respect to the current provisions: N.C. Gen. Stat. §§ 122C-268.1 and -276.1.

The State asserts that the Supreme Court's discussion in *Tew* of this issue was *dicta*. To the contrary, this holding addressed a specific argument raised by the petitioner. The petitioner had argued to the Court that the trial court's "findings that he is now sane and safe require[d] his unconditional release." *Tew*, 280 N.C. at 617, 187 S.E.2d at 17. In responding to this argument, the Court concluded that Tew should not be unconditionally released, but rather that there should be a trial de novo, following which he could be (1) granted an unconditional release, (2) returned to the custody of Dorothea Dix Hospital, or (3) granted a conditional release. *Id.* at 621, 187 S.E.2d at 19. The Court's determination that the trial court had authority to grant a conditional release thus is not *dicta*.

Our construction of the word "release" to authorize both conditional and unconditional releases is also consistent with the statutory framework's purpose. *See In re Appeal of Bass Income Fund*, 115 N.C. App. 703, 705, 446 S.E.2d 594, 595 (1994) (" 'The words and phrases of a statute must be interpreted contextually,' and read in a manner which effectuates the legislative purpose." (quoting *In re Kirkman*, 302 N.C. 164, 167, 273 S.E.2d 712, 715 (1981))). In *Tew*, 280 N.C. at 618, 187 S.E.2d at 17, the Supreme Court explained that the Legislature had a dual purpose in requiring automatic commitment for insanity acquittees: "The commitment of such a person following an acquittal is imposed for the protection of society and the individual confined—not as punishment for crime."

Likewise, in *In re Rogers*, 78 N.C. App. 202, 204, 336 S.E.2d 682, 684 (1985), *disc. review denied*, 316 N.C. 194, 341 S.E.2d 578 (1986), this Court confirmed that N.C. Gen. Stat. § 122-58.13 (Supp. 1983) (repealed 1985), a precursor to the judicial review statute N.C. Gen. Stat. § 122C-277, "creates an additional procedural safeguard for the public while, simultaneously, providing the respondent the opportunity for release afforded others similarly committed." This Court stressed that the statute "balances society's right to be protected from violent crimes against respondent's right to be released when he no longer needs hospitalization." *Rogers*, 78 N.C. App. at 204, 336 S.E.2d at 684.

It is apparent that the same dual purposes undergird the current statutory framework. *See also Jones v. United States,* 463 U.S. 354, 368, 77 L. Ed. 2d 694, 708, 103 S. Ct. 3043, 3051-52 (1983) ("The purpose of commitment following an insanity acquittal, like that of civil commitment, is to treat the individual's mental illness and protect him and society from his potential dangerousness."). If, however, one of the primary purposes is to protect the public from insanity acquittees, then it is illogical to construe the word "release" in a manner that provides less protection to the public than the public receives in connection with involuntary commitments under other statutes.

With respect to other people who have been involuntarily committed, they can be transitioned into society through a conditional release or outpatient commitment program. The State would have us hold, however, that the General Assembly intended to deprive trial courts of the authority to similarly transition insanity acquittees into society through a conditional release. The State's closing argument in this case set out precisely the increased risk resulting from an unconditional release when compared to a conditional release. Yet, the State asks us to hold that a trial court has a choice only of (1) unconditionally releasing an insanity acquittee—creating a risk to the public—or (2) recommitting the insanity acquittee even though he is ready to take steps to return to society. This approach cannot be reconciled with the dual purposes of the statutory framework.

Finally, construing the statutes to preclude a conditional release would raise constitutional concerns. *See State v. Fulcher,* 294 N.C. 503, 526, 243 S.E.2d 338, 353 (1978) (holding that statutes should be construed to avoid "conflict with the superior voice of the Constitution"). A prison inmate—necessarily convicted of a crime—who is committed to Dorothea Dix Hospital during imprisonment would, if the inmate's sentence expired while committed, be entitled to a conditional release. The State's construction of the statute would deprive an insanity acquittee of the same opportunity. In *Foucha v. Louisiana,* 504 U.S. 71, 86, 118 L. Ed. 2d 437, 452, 112 S. Ct. 1780, 1789 (1992), the United States Supreme Court held unconstitutional a Louisiana statute that treated criminals and insanity acquittees differently without a "convincing reason."

Moreover, the United States Supreme Court has held that "[t]he Due Process Clause 'requires that the nature and duration of commitment bear some reasonable relation to the purpose for which the individual is committed.'" *Jones,* 463 U.S. at 368, 77 L. Ed. 2d at 708, 103 S. Ct. at 3052 (quoting *Jackson v. Indiana,* 406 U.S. 715, 738, 32

**IN RE HAYES**

[199 N.C. App. 69 (2009)]

L. Ed. 2d 435, 451, 92 S. Ct. 1845, 1858 (1972)). Interpreting our statutes to preclude a trial court's conditional release of an acquittee would raise a serious question whether such a statute bears a reasonable relation to the State's interest in protecting the public.

<u>Conclusion</u>

We, therefore, hold that a trial court has authority following a hearing under N.C. Gen. Stat. § 122C-268.1 and § 122C-276.1 to order a conditional release of an insanity acquittee. Here, it is apparent from the trial court's findings of fact that its assumption that it had no authority to order a conditional release played a fundamental role in its decision in this case. The trial court found that "there is a reasonable probability that the respondent's seriously violent conduct will be repeated and that he will be dangerous to others in the future *if unconditionally released with no supervision at this time*." The trial court did not make findings of fact that such a reasonable probability exists in the absence of an unconditional release. We cannot determine that the trial court, if aware that a conditional release was a legal disposition, would have still recommitted Hayes. *See Tew,* 280 N.C. at 621, 187 S.E.2d at 19 (vacating commitment order and remanding for hearing de novo when "at the time [the trial judge] made his findings he was under a misapprehension as to the applicable law" regarding commitment of insanity acquittee).

We, therefore, must reverse the trial court's 1 October 2007 commitment order and remand for a hearing de novo to decide whether Hayes has met his burden of proof and, if he has, whether he should be conditionally or unconditionally released. We leave to the discretion of the trial court whether to base the new decision on the existing record or whether to hear additional evidence given the parties' focus, in the first hearing, on recommitment versus unconditional release. Due to our disposition of this appeal, we do not address Hayes' other arguments on appeal.

Reversed and remanded.

Judges ROBERT C. HUNTER and STEELMAN concur.