An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA14-149
NORTH CAROLINA COURT OF APPEALS

Filed: 5 August 2014

IN THE MATTER OF:
LAWRENCE BULLOCK, III,
    Respondent

Granville County
No. 11 SPC 84

Appeal by respondent from order entered 15 October 2013 by Judge Robert H. Hobgood in Granville County Superior Court. Heard in the Court of Appeals 21 May 2014.

    *Attorney General Roy Cooper, by Assistant Attorney General Adam M. Shestak, for the State.*

    *Peter Wood, for respondent.*

    CALABRIA, Judge.

Lawrence Bullock, III ("respondent") appeals from an order recommitting him to the forensic unit at Central Regional Hospital for a period not to exceed 365 days. We affirm.

## I. Background

In August 1999, respondent was found not guilty by reason of insanity ("NGRI") for the offenses of first degree burglary and second degree kidnapping. Respondent was involuntarily

committed to Dorothea Dix Hospital, and is currently committed to the forensic unit at Central Regional Hospital. Respondent has remained hospitalized continuously, subject to periodic recommitment hearings, since 1999.

During respondent's most recent recommitment hearing on 20 September 2013, Beth Ridgway, M.D. ("Dr. Ridgway"), one of respondent's treating physicians, testified regarding respondent's mental condition. Dr. Ridgway testified that respondent was diagnosed with schizoaffective disorder, bipolar type, which caused him to suffer from psychosis, hypersexual tendencies, and delusions, and that respondent had a personality disorder that predisposed him to violent behavior, residual psychosis, and antisocial behavior. Dr. Ridgway indicated that respondent's symptoms were diminished by medication, but never fully subsided.

Respondent sometimes refused to take his medication, and his condition deteriorated rapidly on those occasions. According to both Dr. Ridgway and respondent's sister, respondent has expressed his belief that he does not have a psychological condition that requires medication. Dr. Ridgway indicated that she believed respondent would not comply with his medication regimen without medical supervision, and that it was

unlikely that family members would be able to compel respondent to remain on his medication if he refused to comply.

Dr. Ridgway also testified regarding respondent's history of violent and disruptive behavior. According to witnesses, respondent had assaulted staff and other patients on several occasions between 2002 and 2009. Specifically, in 2005, respondent attempted to choke one of the nurses, and later indicated that he had intended to kill or render the nurse unconscious for the purpose of sexually assaulting her. Respondent also punched another patient in the face in August 2013 (the "August 2013 assault"). Dr. Ridgway testified that respondent had lost grounds privileges due to his disruptive behavior, and she was treating him in the forensic maximum unit at Central Regional Hospital. According to Dr. Ridgway, respondent was a danger to the community even while properly medicated, and she recommended that respondent be recommitted for one year.

Respondent's sister testified regarding short visits respondent had made to her home and family events during his hospitalization. Respondent had briefly visited her twice outside the hospital for Thanksgiving 2012 and March 2013. During those visits, respondent was accompanied by a hospital

staff member. Respondent's sister also testified that respondent had attended her daughter's wedding ceremony in August 2011, and also attended an aunt's funeral in November 2011. Respondent also attended a concert at the Durham Performing Arts Center in April 2013 with family members. Respondent's sister often spoke with him about taking his medications, but respondent indicated that he did not believe he needed his medications, and that he believed his medications caused his diabetes. She believed respondent did need the medication. Respondent's sister further testified that she did not notice any change in respondent, and that he behaved appropriately and interacted appropriately with her two foster children. She also indicated that while she was in respondent's presence, she never felt any threat or danger from him.

Respondent also testified on his own behalf. He asserted that he never struck a nurse, and believed that his diabetes was intentionally caused by his medication. Respondent claimed that in the August 2013 assault, he hit the patient twice with his fists because the patient had hung up the phone on respondent's niece. Respondent also claimed that the August 2013 assault was the first time he had ever become violent with another patient. He indicated that he would remain on his medication, and that he

had a plan to live with his brother and seek outpatient mental health treatment if he were released.

After the hearing, the trial court entered an order finding that respondent had a history of rapid decompensation after his medication was adjusted or stopped, which caused him to become violent. The trial court also made findings regarding respondent's belief that he did not require medication and his history of violent behavior during his hospitalization. The court further found that respondent was unlikely to continue his prescribed medication if he were discharged or conditionally released, and that respondent's original offenses and his assaults on hospital staff and other patients all occurred in the "relevant past." The trial court concluded that respondent failed to show that he no longer suffered from a mental illness or that he was no longer dangerous to others, and recommitted respondent for a period not to exceed 365 days. Respondent appeals.

## II. Findings of Fact

Respondent first argues that the trial court erred in entering an order of recommitment because he demonstrated, by a preponderance of the evidence, that he was no longer a danger to himself or others. We disagree.

The trial court has the authority to determine whether the competent evidence offered in a particular case met the burden of proof. *In re Hayes*, 151 N.C. App. 27, 31-32, 564 S.E.2d 305, 308 (2002). Furthermore, it is "not the function of this Court to reweigh the evidence on appeal." *In re Bullock*, ___ N.C. App. ___, ___, 748 S.E.2d 27, 30, *disc. review denied*, ___ N.C. ___, 752 S.E.2d 149 (2013) (citation omitted). Therefore, we do not consider whether respondent presented evidence sufficient to meet his burden of proof.

Respondent also contends that several of the trial court's findings and conclusions of law were not supported by competent evidence. Specifically, respondent challenges the trial court's findings that respondent did not believe that he needed to take medication; that based upon respondent's history and beliefs regarding his medication, there was little chance that respondent would take his medications outside of the hospital; and that there was a reasonable probability that respondent would inflict, attempt to inflict, or threaten to inflict serious bodily harm on others if discharged or conditionally released. However, respondent merely states that he disputes these findings, and does not explain why these findings are erroneous. Therefore, this argument is deemed abandoned. *See*

N.C.R. App. P. 28(b)(6) (2013) ("Issues not presented in a party's brief, or in support of which no reason or argument is stated, will be taken as abandoned.").

Respondent also challenges several findings as not supported by competent evidence. Specifically, respondent disputes findings that he threatened to kill his 1998 victim, that he assaulted another patient by punching him in the face "multiple times," and that he choked a nurse. Dr. Ridgway testified that respondent threatened to either kill or hurt his 1998 victim, and that respondent tried to choke the nurse. Respondent testified that he hit the patient in the August 2013 assault twice. While respondent challenges these findings as "misleading" based upon mere choice of words, the fact remains that there was evidence to support the trial court's findings that respondent threatened to kill his 1998 victim and that he struck the patient more than once during the August 2013 assault.

While respondent is correct that the evidence at the hearing showed that he *attempted* to choke a nurse in the 2005 assault, this error is harmless. *See In re T.M.*, 180 N.C. App. 539, 547, 638 S.E.2d 236, 240 (2006) (stating that where there are "ample other findings of fact" to support the trial court's

conclusion, findings not supported by evidence constituted harmless error). The trial court also found that the incidents involving respondent's 1998 victim, the 2005 assault, and the August 2013 assault, as well as three other assaults on a nurse and two patients in 2008, 2009, and 2010, occurred in the relevant past. Therefore, there were "ample other findings of fact" to support the trial court's conclusion that respondent remained dangerous to others. *Id.*

### III. Conditional Release

Next, respondent argues that the trial court erred by failing to consider respondent's conditional release as an option. We disagree.

Respondent cites *In re Hayes (Hayes II)*, 199 N.C. App. 69, 681 S.E.2d 395 (2009), to support his position. In *Hayes II*, the trial court ordered the respondent recommitted for inpatient treatment after hearing evidence from several psychologists and psychiatrists who differed as to the respondent's mental illness and risk for violence. *Id.* at 71-74, 681 S.E.2d at 397-399. The respondent's counsel made no argument for conditional release. *Id.* at 76, 681 S.E.2d at 400. The trial court found that the respondent would "be dangerous to others in the future *if unconditionally released with no supervision* at this time."

*Id.* at 74, 681 S.E.2d at 399. The trial court failed to mention conditional release in its findings. *Id.* at 77, 681 S.E.2d at 400. This Court indicated that it was apparent from the record that the trial court believed its only options were to either recommit the respondent or to unconditionally release him. *Id.* at 70, 681 S.E.2d at 396. This Court accordingly held it was necessary to reverse and remand the case for the trial court's consideration of conditional release. *Id.* at 85, 681 S.E.2d at 405.

In the instant case, however, respondent's counsel did argue the option of conditional release in his closing, and the trial court made findings regarding the possibility of conditional release. The trial court specifically found that

> Due to Respondent's past violent acts, the current, persistent symptoms of his schizoaffective disorder including paranoia and delusions, and his belief that he does not need antipsychotic medication, there is a reasonable probability that Respondent will inflict, attempt to inflict, or threaten to inflict serious bodily harm on another if discharged or conditionally released at this time.

The trial court also made several findings giving specific reasons why respondent requires the direct supervision of psychiatric staff. Because the trial court specifically considered conditional release, and found that respondent's

conditional release would result in danger to others, this argument is overruled.

## IV. Conclusion

In conclusion, we hold that the trial court did not err in entering an order for recommitment because its findings of fact were supported by competent evidence. Additionally, the trial court properly considered conditional release as an option for respondent. The trial court's order recommitting respondent to Central Regional Hospital for a period of 365 days is affirmed.

Affirmed.

Judges BRYANT and GEER concur.

Report per Rule 30(e).