Wake County v. Hotels.com, L.P., 2012 NCBC 61.

| STATE OF NORTH CAROLINA | | IN THE GENERAL COURT OF JUSTICE |
| --- | --- | --- |
| | | SUPERIOR COURT DIVISION |
| COUNTY OF WAKE | | MASTER FILE NO. 06 CVS 16256 |

| | | |
| --- | --- | --- |
| WAKE COUNTY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **ORDER AND OPINION** |
| v. | ) | |
| | ) | |
| HOTELS.COM, L.P., et al., | ) | |
| | ) | |
| Defendants. | ) | |

_____

| STATE OF NORTH CAROLINA | | IN THE GENERAL COURT OF JUSTICE |
| --- | --- | --- |
| | | SUPERIOR COURT DIVISION |
| COUNTY OF BUNCOMBE | | 07 CVS 585 |

| | | |
| --- | --- | --- |
| BUNCOMBE COUNTY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| HOTELS.COM, L.P., et al., | ) | |
| | ) | |
| Defendants. | ) | |

_____

| STATE OF NORTH CAROLINA | | IN THE GENERAL COURT OF JUSTICE |
| --- | --- | --- |
| | | SUPERIOR COURT DIVISION |
| COUNTY OF DARE | | 07 CVS 56 |

| | | |
| --- | --- | --- |
| DARE COUNTY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| HOTELS.COM, L.P., et al., | ) | |
| | ) | |
| Defendants. | ) | |

_____

STATE OF NORTH CAROLINA          IN THE GENERAL COURT OF JUSTICE
                                            SUPERIOR COURT DIVISION
COUNTY OF MECKLENBURG                        08 CVS 741

|  |  |
|---|---|
| MECKLENBURG COUNTY, | ) |
|  | ) |
| Plaintiff, | ) |
|  | ) |
| v. | ) |
|  | ) |
| HOTELS.COM, L.P., et al., | ) |
|  | ) |
| Defendants. | ) |

_____

*Shanahan Law Group PLLC by Kieran Shanahan for Plaintiff Wake County.*

*Long, Parker, Warren & Jones, P.A. by Steve Warren for Plaintiff Buncombe County.*

*Ward & Smith, P.A. by Gary J. Rickner, Samuel H. Poole, and Hugh R. Overholt for Plaintiffs Dare County and Mecklenburg County.*

*Williams Mullen by Gilbert C. Laite, III, Charles B. Neely, Jr., Nancy S. Rendleman, and Robert W. Shaw for Defendants.*

Murphy, Judge.

{1}      THIS MATTER is before the Court on Plaintiffs and Defendants' Motions for Summary Judgment (respectively "Plaintiffs' Motion" and "Defendants' Motion"). After considering the parties' motions and briefs, counsels' arguments made during the Court's February 4, 2011, hearing on the parties' Motions, and the subsequently decided authority provided by Defendants, the Court GRANTS Defendants' Motion and DENIES Plaintiffs' Motion.

I.

PROCEDURAL HISTORY

{2}      Plaintiffs and former plaintiff Cumberland County filed their Complaints on various dates between November, 2006 and January, 2008. (Pl. Buncombe Cnty. Compl. 17; Pl. Cumberland Cnty, Compl. 19; Pl. Dare Cnty. Compl. 17; Pl. Mecklenburg Cnty. Compl. 18; Pl. Wake Cnty. Compl. 19.)

{3}     The cases were transferred to the North Carolina Business Court, assigned to this Court, and subsequently consolidated for the resolution of all pre-trial matters.

{4}     The Court entered Orders on Defendants' Motions to Dismiss on November 19, 2007, and May 15, 2008, dismissing: former plaintiff Cumberland County's ("Cumberland") Complaint; Plaintiffs Wake County ("Wake"), Mecklenburg County ("Mecklenburg"), and Dare County's ("Dare") claims for unfair and deceptive trade practices; and Plaintiffs Wake and Dare's claims for conversion. *Wake County v. Hotels.com, LP*, 2007 NCBC 35 (N.C. Super. Ct. Nov. 19, 2007), http://www.ncbusinesscourt.net/opinions/112007%20Opinion%20for%20Webpage%20Hotels.pdf (addressing Defendants' motions to dismiss Wake, Buncombe County ("Buncombe"), Dare, and Cumberland's Complaints); *Wake County v. Hotels.com, LP*, No. 06 CVS 16256 (N.C. Super. Ct. May 15, 2008) (order granting in part Defendants' motion to dismiss Mecklenburg's Complaint).

{5}     Plaintiffs and Defendants filed their Motions for Summary Judgment on November 1, 2010, and a hearing was held on the parties' motions on February 4, 2011.

## II.
## FACTUAL BACKGROUND

{6}     Summary judgment is improper where findings of fact are necessary to resolve an issue of material fact. *Collier v. Collier*, 204 N.C. App. 160, 161, 693 S.E.2d 250, 251–52 (2010). However, for the aid of the parties and the courts, the trial court may provide a summary of material facts that it finds to be uncontroverted in deciding the motion. *Id.* at 161–62, 693 S.E.2d at 252. The following facts are undisputed in the record.

{7}     Plaintiffs are North Carolina counties. (Wake Compl. ¶ 1; Mecklenburg Compl. ¶ 1; Dare Compl. ¶ 1; Buncombe Compl. ¶ 8.)

{8}     Defendants operate online websites that allow travelers to research and book reservations with airlines, hotels, car rental companies, and cruise lines.

(Wake Compl. ¶ 24; Dare Compl. ¶ 24; Buncombe Compl. ¶ 30; Mecklenburg Compl. ¶ 22; Defs.' Br. in Supp. of Mot. for Summ. J. 14.)

{9}     By authorization of the North Carolina General Assembly, each Plaintiff has, through passage of either an ordinance or resolution, enacted an occupancy tax (hereafter the "Tax" or "Occupancy Tax") that requires the collection and remittance of a tax equal to a percentage of the gross receipts derived from the rental of hotel rooms and other similar accommodations within each County.  (Wake Compl. ¶ 19; Mecklenburg Compl. ¶ 18; Dare Compl. ¶¶ 19–20; Buncombe Compl. ¶ 33.)

{10}     Plaintiffs allege that Defendants negotiate and contract with hotels, motels, and inns operating within their jurisdictions for rooms at discounted rates, then mark up the prices and sell the rooms to consumers.  (Wake Compl. ¶ 25; Mecklenburg Compl. ¶ 23; Dare Compl. ¶ 25; Buncombe Compl. ¶ 31.)

{11}     Plaintiffs allege Defendants charge and collect the Occupancy Tax from consumers based on Defendants' higher sales rate ("Sales Rate") charged to consumers, but only remit to Plaintiffs a tax amount based on the discounted rates ("Discount Rate") paid by Defendants to the hotel owners, thereby pocketing the difference.  (Wake Compl. ¶¶ 24–27; Mecklenburg Compl. ¶¶ 24–25, 56; Dare Compl. ¶¶ 24–27; Buncombe Compl. ¶ 36.)  Buncombe County professes uncertainty as to whether Defendants engage in this practice (Buncombe Compl. ¶ 35), but alleges Defendants are "charging more money in 'fees and taxes' than required by the statutory occupancy tax rate, resulting in additional, hidden, and unlawfully retained profits."  (Buncombe Compl. ¶ 36.)

{12}     Plaintiffs argue that Defendants are obligated to pay the Occupancy Tax because: (1) the collection obligations under the Occupancy Tax are not limited to hotel operators, and therefore, Defendants are responsible for collecting the Tax, (2) Defendants, through their contracts with hotels, have placed themselves in the sole position of collecting the Occupancy Tax, and (3) Defendants can not collect a tax but fail to remit the total amount collected to the Plaintiffs.

{13} Plaintiffs also allege that Defendants have failed to file occupancy tax returns, as required by law. (Wake Compl. ¶ 29; Mecklenburg Compl. ¶ 27; Dare Compl. ¶ 29; Buncombe Compl. ¶ 35.)

{14} Plaintiffs assert claims for: (1) declaratory judgment; (2) violations of the Occupancy Tax; (3) conversion; (4) imposition of a constructive trust; (5) an accounting; and (6) agency liability.

{15} They seek: (1) an order compelling Defendants to pay the full amount of the tax going forward; (2) recovery of all unpaid taxes; (3) civil penalties pursuant to the Occupancy Tax and state law; (4) treble damages; and (5) recovery of Plaintiffs' costs and attorney fees.

III.

STANDARD OF REVIEW

{16} "The purpose of summary judgment is to determine whether any issues of material fact exist, and if not, eliminate the necessity of a full trial where only questions of law are involved." *Strickland v. Lawrence*, 176 N.C. App. 656, 661, 627 S.E.2d 301, 305, *disc. rev. denied*, 360 N.C. 544, 633 S.E.2d 472 (2006) (citing *Foster v. Winston-Salem Joint Venture*, 303 N.C. 636, 641–42, 281 S.E.2d 36, 40 (1981)). "The movant has the burden of establishing the absence of any triable issues of fact." *Id.* This burden can be met in one of two ways: "(1) 'by proving an essential element of the opposing party's claim does not exist, cannot be proven at trial, or would be barred by an affirmative defense'; or (2) 'by showing through discovery that the opposing party cannot produce evidence to support an essential element of her claim.'" *Id.* (quoting *Dobson v. Harris*, 352 N.C. 77, 83, 530 S.E.2d 829, 835 (2000)).

{17} "In ruling on a motion for summary judgment, 'the court may consider the pleadings, depositions, admissions, affidavits, answers to interrogatories, oral testimony[,] and documentary materials.'" *Id.* (quoting *Dendy v. Watkins*, 288 N.C. 447, 452, 219 S.E.2d 214, 217 (1975)). "A question of statutory interpretation is ultimately a question of law for the courts," and thus, appropriate for summary

judgment. *Browne v. Flowe*, 349 N.C. 520, 523, 507 S.E.2d 894, 896 (1998) (citing *Wood v. J.P. Stevens & Co.*, 297 N.C. 636, 642, 256 S.E.2d 692, 696 (1979)).

IV.

ANALYSIS

{18} A County's authority to tax room rental transactions within its borders is controlled by enactments of the North Carolina General Assembly and circumscribed further by the express language of each County's Occupancy Tax ordinance or resolution.

{19} Each of the Defendants has been authorized by statutory provisions to enact an Occupancy Tax, and each has done so.

{20} Each County's Occupancy Tax imposes a tax of some specified percentage on the gross receipts derived from the rental of any room, lodging, or similar accommodation within the County that is "subject to the State sales tax . . . under [s]ection 105-164.4(a)(3) of the North Carolina General Statutes." (Wake Compl. ¶ 19.)

{21} The parties' central disagreement in these cases relates to whether Defendants are obligated to collect the Occupancy Tax. Plaintiffs argue that Defendants are obligated to collect the Occupancy Tax because: (1) the counties' ordinances and resolutions require Defendants to collect the Tax, (2) Defendants have contractually obligated themselves as the only parties able to collect the Tax, and (3) Defendants have collected the Tax but failed to remit the full amount to the Plaintiffs. Accordingly, the Court must determine if Defendants are obligated to collect and remit the Occupancy Tax under any of these theories.

A.

STANDARD FOR STATUTORY INTERPRETATION

{22} "The cardinal principle of statutory construction is that the intent of the legislature is controlling." *State ex rel. Utils. Comm'n v. Public Staff N.C. Utils. Comm'n*, 309 N.C. 195, 210, 306 S.E.2d 435, 443 (1983) (citing *In re Brownlee*, 301 N.C. 532, 272 S.E.2d 861 (1981)). "In ascertaining the legislative intent, courts should consider the language of the statute, the spirit of the statute, and what it

seeks to accomplish." *Id.* at 210, 306 S.E.2d at 444 (citing *Stevenson v. City of Durham*, 281 N.C. 300, 188 S.E.2d 281 (1972)).

{23}     "To effectuate that intent, '[s]tatutes dealing with the same subject matter must be construed *in pari materia* and harmonized, if possible, to give effect to each.'" *In re Hayes*, 199 N.C. App. 69, 79, 681 S.E.2d 395, 401 (2009) (quoting *Bd. of Adjustment of the Town of Swansboro v. Town of Swansboro,* 334 N.C. 421, 427, 432 S.E.2d 310, 313 (1993)) (alteration in original).

{24}     "'[A] statute must be construed, if possible, so as to give effect to every part of it, it being presumed that the Legislature did not intend any of its provisions to be surplusage.'" *Id.*, at 78, 681 S.E.2d at 401 (quoting *State v. Williams*, 286 N.C. 422, 431, 212 S.E.2d 113, 119 (1975)).

{25}     When construing a statute, "words . . . shall be given the[ir] ordinary meaning, unless it appears from the context, or even otherwise, in the statute, that another and different sense was intended." *Aberenethy v. Board of Comm'rs*, 169 N.C. 631, 635, 86 S.E. 577, 579 (1915).

{26}     "If the language of a statute is free from ambiguity and expresses a single, definite, and sensible meaning, judicial interpretation is unnecessary and the plain meaning of the statute controls." *Mazda Motors of Am., Inc. v. Sw. Motors, Inc.*, 296 N.C. 357, 361, 250 S.E.2d 250, 253 (1979) (citing *Institutional Food House, Inc. v. Coble*, 289 N.C. 123, 221 S.E.2d 297 (1976); *Comm'rs v. Henderson*, 163 N.C. 114, 79 S.E. 442 (1913)).  But when "a literal reading of a statute 'will lead to absurd results, or contravene the manifest purpose of the Legislature, as otherwise expressed, the reason and purpose of the law shall control and the strict letter thereof shall be disregarded.'" *Taylor v. Crisp*, 286 N.C. 488, 496, 212 S.E.2d 381, 386 (1975) (quoting *Freeland v. Orange Cnty.*, 273 N.C. 452, 456, 160 S.E.2d 282, 286 (1968)).

{27}     "[I]f the language is ambiguous and the meaning in doubt, judicial construction is required to ascertain the legislative intent." *Institutional Food House, Inc.*, 289 N.C. at 135, 221 S.E.2d at 304 (citing *Underwood v. Howland, Comr. of Motor Vehicles*, 274 N.C. 473, 164 S.E.2d 2 (1968); *Young v. Whitehall Co.,*

*Inc.*, 229 N.C. 360, 49 S.E.2d 797 (1948); *State v. Humphries*, 210 N.C. 406, 186 S.E. 473 (1936)). However, "[w]hen the statute under consideration is one concerning taxation, special canons of statutory construction apply." *Lenox, Inc. v. Tolson*, 353 N.C. 659, 664, 548 S.E.2d 513, 517 (2001) (citing *In re Denial of Refund of N.C. Inheritance Taxes*, 303 N.C. 102, 106, 277 S.E.2d 403, 407 (1981)). "If a taxing statute is susceptible to two constructions, any uncertainty in the statute or legislative intent should be resolved [against the government and] in favor of the taxpayer." *Id.* (citing *Polaroid Corp. v. Offerman*, 349 N.C. 290, 297, 507 S.E.2d 284, 290 (1998); *Regional Acceptance Corp. v. Powers*, 327 N.C. 274, 277, 394 S.E.2d 147, 149 (1990)); *Colonial Pipeline Co. v. Clayton*, 275 N.C. 215, 166 S.E.2d 671, (1969).

B.

DEFENDANTS' OBLIGATION TO COLLECT THE OCCUPANCY TAX UNDER THE COUNTIES' ORDINANCES AND RESOLUTIONS

1.

WHO IS RESPONSIBLE FOR COLLECTING THE OCCUPANCY TAX?

{28}   "A county may impose taxes only as specifically authorized by act of the General Assembly." N.C. GEN. STAT. § 153A-146 (2012). In this case, the North Carolina General Assembly passed statutes authorizing each Plaintiff to levy an Occupancy Tax. 1991 Sess. Laws 594 (Wake); 1989 Sess. Laws 821 (Mecklenburg); 2001 Sess. Laws 439 (Dare); 2001 Sess. Laws 162 (Buncombe).

{29}   The statutes did not create the Occupancy Tax; rather they allow the counties to levy the Tax through the passage of a resolution or ordinance. 1991 Sess. Laws 594 § 4; 1989 Sess. Laws 821 § 6; 2001 Sess. Laws 439 § 7.1; 2001 Sess. Laws 162 § 1.

{30}   To determine whether the Defendants are obligated to pay the Occupancy Tax under the counties' ordinances or resolutions, the Court must decide "what" and "who" is taxed. Although the language in each of the counties' ordinances is different, collectively the ordinances can be placed into one of two groups. The first group of ordinances (Mecklenburg and Wake) imposes collection

responsibilities on the "operator of a taxable establishment." Mecklenburg County, N.C., Ordinance to Impose and Levy a Two Percent Room Occupancy Tax § 5 (Sept. 4, 2002) ("Mecklenburg Ordinance I"); Mecklenburg County, N.C., Ordinance to Impose and Levy a Room Occupancy Tax § 4 (Mar. 21, 2006) ("Mecklenburg Ordinance II"); Wake County, N.C., Res. R-91-107 § 3 (1991).[1] The second group of ordinances (Dare and Buncombe) imposes collection responsibilities on the "operator of a business subject to a room occupancy tax." N.C. GEN. STAT. § 153A-155(c) (2011); *see also* Dare County, N.C., Res. 91-9-26 § 3 (1991) (adopting the procedures for collection provided in the county's authorizing statute); *and* Buncombe County, N.C., Res. 01-06-14 § 1 (2001) (stating that the tax is subject to the limitations as set out in the county's enabling legislation).

{31}    Both groups of ordinances and resolutions are clear about "who" is responsible for collecting the Tax. Therefore, the Court concludes that in order for Defendants to be responsible for collecting the Occupancy Tax under the counties' ordinances and resolutions, each Defendant must be classified as an "operator" of either a "taxable establishment," or a "business subject to a room occupancy tax."

2.

OPERATOR

{32}    The counties place the responsibility for collecting the Occupancy Tax on "operators." *See* Mecklenburg Ordinance I § 5; Mecklenburg Ordinance II § 4; Wake Resolution § 3; N.C. GEN STAT. § 153A-155(c).[2] The counties' authorizing statutes, ordinances, and resolutions do not define the term "operator." Therefore, the Court will give "operator" its ordinary meaning. *See Aberenethy*, 169, N.C. 631, 635, 86 S.E. 577, 579. Operator is commonly defined as "one that operates a

---

[1] Mecklenburg County levies an eight percent Occupancy Tax through two different ordinances. Mecklenburg Ordinance I levies six percent of the tax, and Mecklenburg Ordinance II levies the remaining two percent.

[2] As mentioned above, Dare and Buncombe's resolutions adopted the collection methods provided in their authorizing statutes. Dare County, N.C., Res. 91-9-26 § 3; Buncombe County, N.C., Res. 01-06-14 § 1. Both counties' authorizing statutes provide that "[a] tax levied under this act shall be levied, administered, collected, and repealed as provided in G.S. 153A-155." 2001 Sess. Laws 439 § 7.2; 2001 Sess. Laws 162 § 1.

business." MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 870 (11th ed. 2005).[3] To "operate," is "to cause to function." *Id.* at 869. A reasonable conclusion for the Court to reach is that the ordinances place collection responsibilities on those who cause a "taxable establishment" or "business subject to a room occupancy tax" to function. Mecklenburg Ordinance I § 5; Mecklenburg Ordinance II § 4; Wake County Res. R-91-107 § 3; Dare County, Res. 91-9-26 § 3; Buncombe County, Res. 01-06-14 § 1.

3.

TAXABLE ESTABLISHMENT

{33} Mecklenburg and Wake's ordinances levy an occupancy tax on "the receipts, . . . derived from the rental of any room, lodging or accommodation furnished by a hotel, motel, inn, tourist camp, or similar place within [the] County that is subject to [the State] sales tax . . . ." Mecklenburg Ordinance I § 3; Mecklenburg Ordinance II § 3; *see also* Wake Resolution § 1. The ordinances go on to say that:

> [e]very *operator of a taxable establishment* shall, on and after the effective date of the levy of a tax under this ordinance, collect the tax. The tax shall be stated and charged separately from the room rental charge or sales price, shall be shown separately on the taxable establishment's sales records and shall be paid by the purchaser to the taxable establishment as trustee for and on account of [the] County.

Mecklenburg Ordinance I § 5 (emphasis added); Mecklenburg Ordinance II § 4 (emphasis added); *see also* Wake Resolution § 3.

{34} These ordinances tell the Court what is taxed, who is taxed, and who is responsible for collecting the tax. Stated plainly, Mecklenburg and Wake's ordinances define "what" is taxed as the "receipts . . . derived from the rental of any room . . . furnished by a hotel, motel, inn, tourist camp, or similar place within [the] County that is subject to [the State] sales tax," require that the tax "be paid by the

---

[3] "In the absence of a contextual definition, courts may look to dictionaries to determine the ordinary meaning of words within a statute." *State v. Cockerham*, 155 N.C. App. 729, 734, 574 S.E.2d 694, 698 (2003) (citing *Perkins v. Arkansas Trucking Services, Inc.*, 351 N.C. 634, 638, 528 S.E.2d 902, 904 (2000)).

purchaser to the taxable establishment," and oblige "[e]very operator of a taxable establishment [to] . . . collect the tax." Mecklenburg Ordinance I §§ 3, 5; Mecklenburg Ordinance II §§ 3–4; Wake Resolution §§ 1, 3.

{35}    Taxable establishment is defined in Mecklenburg Ordinance I, as "[a]ny hotel, motel, inn, tourist camp, or similar place that is required *to collect* a room occupancy tax levied pursuant to this Ordinance." Mecklenburg Ordinance I § 1(5) (emphasis added). The Court finds this definition problematic because Mecklenburg Ordinance I Section 5 only imposes collection responsibilities on "operators" of taxable establishments, not hotels, motels, inns, or other similar places themselves. Mecklenburg Ordinance I § 5; *see also In re Hayes*, 199 N.C. App. at 78, 681 S.E.2d at 401 (stating that when construing a statute the court must attempt to give effect to every word). By defining those who collect the tax as "operators of taxable establishments," and "taxable establishments" as those "required to collect a room occupancy tax," the definition of who is responsible for collecting the tax becomes circular.[4] Thus, the Court holds that the language of Mecklenburg Ordinance I is ambiguous, and therefore, the Court must look to other indicators of legislative intent. *See Institutional Food House, Inc.*, 289 N.C. at 135, 221 S.E.2d at 304.

{36}    Because counties can only tax as authorized by the North Carolina General Assembly, N.C. GEN. STAT. § 153A-146, another indicator of legislative intent comes from the statutes authorizing Mecklenburg and Wake to levy the Occupancy Tax. Both Mecklenburg and Wake's authorizing statutes define "taxable establishment" differently than Mecklenburg Ordinance I. Under the authorizing statutes, "taxable establishment" is defined as a "hotel, motel, inn, tourist camp, or similar place *that is subject to a room occupancy tax* levied pursuant to this Part . . . ." 1989 Sess. Laws 821 § 5(b)(8) (emphasis added); 1991 Sess. Laws 594 § 2(5); *see*

---

[4] Mecklenburg Ordinance II and Wake's resolution do not define "taxable establishment," but instead adopt the definition used in the counties' authorizing statutes. Mecklenburg Ordinance II § 1; *see generally* Wake Resolution.

*also* Mecklenburg Ordinance II § 1 (adopting the definitions used in 1989 Sess. Laws 821).

{37}    The adoption of different definitions for "taxable establishment" is significant.  Unlike Mecklenburg Ordinance I's circular definition of "taxable establishment," Mecklenburg and Wake's authorizing statutes and Mecklenburg Ordinance II adopt a clear definition of "taxable establishment" that provides two elements: (1) that the establishment be a "hotel motel, inn, tourist camp, or similar place," and (2) that the establishment be "subject to a room occupancy tax."  1989 Sess. Laws 821 § 5(b)(8); 1991 Sess. Laws 594 § 2(5); *see* Mecklenburg Ordinance II § 1.

{38}    Therefore, the Court concludes that the definition of "taxable establishment," as adopted in Mecklenburg and Wake's authorizing statutes, demonstrates the North Carolina General Assembly's intended definition for "taxable establishment" under Mecklenburg and Wake's Occupancy Tax, and eliminates the ambiguity in Mecklenburg Ordinance I.  Accordingly, the Court will apply the definition of "taxable establishment" adopted in 1989 Sess. Laws 821 § 5(b)(8) to Mecklenburg Ordinance I.[5]

4.

BUSINESS SUBJECT TO A ROOM OCCUPANCY TAX

{39}    Dare and Buncombe's ordinances do not define who is obligated to collect the Occupancy Tax, instead Dare and Buncombe defer to their authorizing statutes.  Dare County, N.C., Res. 91-9-26 § 3 (1991) (adopting the procedures for collection detailed in the county's authorizing statute); Buncombe County, N.C., Res. 01-06-14 § 1 (2001) (stating that the tax is subject to the limitations as set out in the county's enabling legislation).

{40}    Dare and Buncombe's authorizing statutes provide that "[a] tax levied under this act shall be levied, administered, collected, and repealed as provided in

---

[5] The Wake Resolution does not define "taxable establishment."  *See generally* Wake Resolution.  Therefore, the Court applies the definition provided in Wake's authorizing statute to the Wake Resolution.

G.S. 153A-155." 2001 Sess. Laws 439 § 7.2 (2001) (Dare); 2001 Sess. Laws 162 §1 (2001) (Buncombe). North Carolina General Statute 153A-155(c) provides that "[e]very operator of a business subject to a room occupancy tax shall, on and after the effective date of the levy of the tax, collect the tax." N.C. GEN. STAT. § 153A-155(c) (2011).

{41}    The statute does not provide a definition for business, but does state that the "operator of a business who collects a room occupancy tax may deduct from the amount remitted to the taxing county a discount equal to the discount the State allows *the operator* for State sales and use tax." N.C. GEN. STAT. § 153A-155(c) (emphasis added). So, in addition to being an operator of a business, which is commonly defined as "a commercial or sometimes an industrial enterprise," MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 167, section 153A-155(c) also indicates that an operator of a business under the occupancy tax would also be an operator able to take a discount under the State sales and use tax. To take a discount under the State sales and use tax, an operator of a business would need to be subject to the State sales and use tax.

{42}    The State sales and use tax taxes retailers, N.C. Gen. Stat. § 105-164.4(a), and defines retailers as "[o]perators of hotels, motels, tourist homes, tourist camps, and similar type businesses and persons who rent private residences and cottages to transients . . . ." N.C. GEN. STAT. § 105-164.4(a)(3) (2006). Reasonably interpreted, to be subject to the State sales and use tax, and therefore able to take a discount under the State sales and use tax, an operator of a business must also be the "[o]perator[] of [a] hotel[], motel[], tourist home[], tourist camp[], [or] similar type business[] [or] person[] who rent[s] private residences and cottages to transients." *Id.*

{43}    By requiring that a business subject to the Occupancy Tax also be subject to the State sales and use tax, and thus meet the definition of "retailer," section 153A-155(c) makes sense of the phrase "operator of a business subject to a room occupancy tax." Applying the definition of "retailer" in conjunction with "business" places responsibility for collecting the Occupancy Tax on the "operator of

a [hotel, motel, tourist home, tourist camp, and similar type business and persons who rent private residences and cottages to transients] subject to a room occupancy tax." This is both consistent with the common definition of business, and like the definition of "taxable establishment" discussed above, provides the Court with a clear test for who is responsible for collecting the Occupancy Tax.

{44}    In addition, the Court's interpretation of section 153A-155(c) as requiring "business," as used in 153A-155(c), to also meet the definition of retailer, as used in 105-164.4(a)(3), is further supported by the result that the meaning of the phrase "operator of a business subject to a room occupancy tax," becomes virtually identical to "operator of a taxable establishment." *See* ¶¶ 36–37 *supra*; 1989 Sess. Laws 821 § 5(b)(8) (stating that "taxable establishment" is defined as a "hotel, motel, inn, tourist camp, or similar place that is subject to a room occupancy tax . . . ."); *see also* 1991 Sess. Laws 594 § 2(5). Because all of the counties' ordinances and resolutions are *in pari materia*, this interpretation fulfills the Court's responsibility to, if possible, harmonize their construction. *See In re Hayes*, 199 N.C. App. at 79, 681 S.E.2d at 401 (stating that statutes dealing with the same subject matter should be harmonized).

{45}    Therefore, the Court holds that the legislature intended for the definition of the term "business," as used in section 153A-155(c), to be coterminous with the definition of "retailer" as defined in section 105-164.4(a)(3) of the State sales and use tax. Accordingly, the Court holds that in order for Defendants to be responsible for collecting the Occupancy Tax, Plaintiffs must show that the Defendants are: (1) "operators of hotels, motels, tourist homes, tourist camps, [or] similar type businesses [or] persons who rent private residences and cottages to transients," N.C. Gen. Stat. § 105-164.4(a)(3), and (2) "subject to a room occupancy tax." N.C. GEN. STAT. § 153A-155(c); 1989 Sess. Laws 821 § 5(b)(8); 1991 Sess. Laws 594 § 2(5).

5.

## ARE DEFENDANTS OPERATORS OF SIMILAR TYPE BUSINESSES?

{46}    Plaintiffs argue that Defendants are responsible for collecting the Occupancy Tax from purchasers because Defendants are "operators of businesses that are 'similar type businesses' to hotels under the [counties'] Ordinances." (Pls.' Mem. Supp. Mot. Summ. J. 29.) Plaintiffs do not assert or contend that Defendants are hotels, motels, tourist homes, tourist camps, or persons who rent private residences and cottages to transients.

{47}    Defendants counter that their business models prevent them from being considered "similar type businesses," and thus, they are not obligated to collect the Occupancy Tax under the counties' ordinances or resolutions. (Defs.' Br. Supp. Mot. Summ. J. 23–36.) Because the parties have not argued that Defendants are hotels, motels, tourist homes, tourist camps, or persons who rent private residences and cottages to transients, the Court will only evaluate whether Defendants are "similar type businesses."

{48}    As noted above, for Defendants to be responsible for collecting the Occupancy Tax, they must qualify as operators of "hotels, motels, tourist homes, tourist camps, [or] similar type businesses [or] persons who rent private residences and cottages to transients." N.C. Gen. Stat. § 105–164.4(a)(3); *see also* 1989 Sess. Laws 821 § 5(b)(8) (defining "taxable establishment" within Mecklenburg's authorizing statute), *and* 1991 Sess. Laws 594 § 2(5) (defining "taxable establishment" within Wake's authorizing statute), *and* Mecklenburg Ordinance II § 1 (adopting the definition of "taxable establishment" used in 1989 Sess. Laws 821).

{49}    Neither the Occupancy Tax authorizing statutes nor the counties' ordinances or resolutions define the term "similar type businesses." Thus, the Court must look elsewhere to determine legislative intent. Under the maxim of *ejusdem generis*, "where words of general enumeration follow those of specific classification, the general words will be interpreted to fall within the same category as those previously designated." *Turner v. Gastonia City Bd. of Education*, 250 N.C. 456, 463, 109 S.E.2d 211, 216 (1959). In this case, the general term of "similar

types businesses," follows the specific terms of "hotels, motels, tourist homes, [and] tourist camps." N.C. Gen. Stat. § 105-164.4(a)(3). Therefore, to be considered a "similar type business[]," the business must fall within the same category as "hotels, motels, tourist homes, [and] tourist camps." *Id.*

{50}    Neither the authorizing statutes nor the counties' ordinances or resolutions define hotel, motel, tourist home, or tourist camp. Therefore, the Court gives the terms their ordinary meaning. *Aberenethy*, 169, N.C. 631, 635, 86 S.E. 577, 579. A hotel is "an establishment that provides lodging and usu. meals, entertainment, and various personal services for the public." MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 601. Like hotels, motels are "establishment[s] which provide[] lodging and parking and in which the rooms are usu. accessible from an outdoor parking area." *Id.* at 810. The Court is unable to find any definition for tourist home or tourist camp, but believes that it was the legislature's intent for the word "tourist" to modify the words home and camp. A tourist is commonly known as "one who makes a tour for pleasure or culture," *Id.* at 1322, while a home is considered "one's place of residence: DOMICILE[,] b: HOUSE . . . ," *Id.* at 594, and a camp is "a place usu. away from urban areas where tents or simple buildings (as cabins) are erected for shelter or for temporary residence (as for . . . vacationers)." *Id.* at 177.

{51}    Plaintiffs argue that Defendants are "similar type businesses" to hotels because Defendants and hotels both:

> collect payment from a customer for the right to occupy the hotel room[,] . . . charge and collect from their online consumer/purchaser the room Sale Price, as well as all taxes and fees[,] . . . act as the merchants of record[,] . . . bear and assume the risk of loss from the transaction with the consumer and the risk of credit card fraud in connection with the rooms sold[,] . . . exercise control over almost every aspect of the consumer's reservation[,] . . . [can] cancel reservations [or provide] . . . refunds[,] . . . [and] have customer service departments that customers may contact during their stay if they are unsatisfied.

(Pls.' Mem. Supp. Mot. Summ. J. 31–33.)

{52} Defendants do not dispute the factual similarities that Plaintiffs draw between Defendants and hotels. However, assuming that everything Plaintiffs argue is true, the Court can not conclude that Defendants are "similar type businesses" to hotels, motels, tourist homes, or tourist camps. Based on the definitions cited above, the Court holds that the common thread between hotels, motels, tourist homes, and tourist camps is the presence of a physical location where lodging is provided for a temporary period of time. While Defendants and hotels might both provide the administrative services that Plaintiffs ask this Court to consider as evidence of similarity between Defendants and hotels, no evidence has been presented, and Plaintiffs do not argue, that Defendants provide lodging at a physical location. Instead Defendants, as Plaintiffs allege in their Complaints, are a group of online websites that allow travelers to research and book reservations with airlines, hotels, car rental companies, and cruise lines. (Wake Compl. ¶ 24; Dare Compl. ¶ 24; Buncombe Compl. ¶ 30; Mecklenburg Compl. ¶ 22.) Simply because Defendants provide room rentals to customers over the internet, does not mean that they are transformed into operators of hotels or "similar type businesses." Federal courts interpreting N.C. Gen. Stat. § 105-164.4(a)(3) under similar facts have also concluded that online retailers like Defendants are "not . . . business[es] . . . of a similar type to a hotel, motel, or tourist home or camp." *Pitt County v. Hotels.com, L.P.*, 553 F.3d 308, 313 (4th Cir. 2009); *see also Pitt County v. Hotels.com, L.P.*, No. 4:06-CV-30-BO, 2007 U.S. Dist. LEXIS 85910 (E.D.N.C. Aug. 13, 2007).

{53} Plaintiffs have failed to present any evidence demonstrating that Defendants are "similar type businesses," as defined by the Court. As such, Defendants can not be classified as operators of "taxable establishments" or "business[es] subject to a room occupancy tax" under any of Plaintiffs' Occupancy Tax ordinances or resolutions, and are thus, not subject to the counties' Occupancy Taxes. Accordingly, the Court GRANTS Defendants' Motion with respect to Plaintiffs' arguments that: (1) collection obligations under the Occupancy Tax are not limited to hotel operators, (2) Defendants are responsible for collecting the

Occupancy Tax under the counties' ordinances and resolutions, and (3) Defendants are required to file occupancy tax returns. Plaintiffs' Motion for Summary Judgment as to Defendants' liability under the counties' ordinances and resolutions is DENIED.

C.

ARE DEFENDANTS CONTRACTUALLY OBLIGATED TO PAY THE OCCUPANCY TAX?

{54} Plaintiffs next argue that Defendants are obligated to collect the Occupancy Tax because they contracted with local hotels for the right to collect the Tax. Plaintiffs contend that because the contracts make Defendants the only parties able to collect the Tax, they must collect the Tax in full. (Pls.' Mem. Supp. Mot. Summ. J. 24–20.) Defendants counter that Plaintiffs argument should be disregarded because: (1) Plaintiffs failed to plead this theory of recovery in their Complaint, and (2) North Carolina's courts have not recognized a theory of recovery for contractual undertaking. (Defs. Br. in Resp. Pls.' Mot. Summ. J. 23–29.) The Court finds both of Defendants' arguments persuasive.

1.

PLEADING THEORIES OF RECOVERY

{55} The general rules of pleadings are contained in Rule 8 of the North Carolina Rules of Civil Procedure. N.C. R. Civ. P. 8. Rule 8 requires that pleadings contain "[a] short and plain statement of the claim sufficiently particular to give the court and the parties notice of the transactions, occurrences, or series of transactions or occurrences, intended to be proved showing that the pleader is entitled to relief." *Id.* at 8(a)(1). To comply with Rule 8, a pleading must,

> give[] sufficient notice of the events or transactions which produced the claim to enable the adverse party to understand the nature of it and the basis for it, to file a responsive pleading, and – by using the rules provided for obtaining pretrial discovery – to get any additional information he may need to prepare for trial.

*Sutton v. Duke*, 277 N.C. 94, 104, 176 S.E.2d 161, 167 (1970).

{56} Defendants argue that Plaintiffs' contractual undertaking theory for recovery should be disregarded because it was not pled in Plaintiffs' Complaints.

(Defs.' Resp. Pls.' Mot. Summ. J. 23–24.)  In support of their argument, Defendants point to a parallel case, argued by Plaintiffs' counsel in Ohio, where the trial court rejected a similar theory of contractual undertaking because plaintiffs failed to include the theory in their complaint.  (Defs.' Resp. Pls.' Mot. Summ. J. 24; *see also City of Findlay v. Hotels.com.*, No. 3:05-CV-07443, slip op. at 6–7 (N.D. Ohio Nov. 18, 2010).)  Defendants also cite to *Cloaninger v. McDevitt,* a case from the United States Court of Appeals for the Fourth Circuit, where at summary judgment, the court refused to allow plaintiff to argue a claim for malicious prosecution under a theory not raised in the complaint.  555 F.3d 324, 336 (4th Cir. 2009) (citing *Barclay White Skanska, Inc. v. Battelle Mem'l Inst.*, 262 Fed. Appx. 556, 563 (4th Cir. 2008) (unpublished) (holding that plaintiff could not argue a theory of recovery based on change orders that were not the change orders mentioned in the complaint)); *see also Tucker v. Union of Needletrades, Indus., & Textile Employees*, 407 F.3d 784, 788 (6th Cir. 2005); *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004); *Shanahan v. City of Chicago*, 82 F.3d 776, 781 (7th Cir. 1996); and *Fisher v. Metro. Life Ins. Co.*, 895 F.2d 1073, 1078 (5th Cir. 1990).

{57}  "The variant language in the North Carolina . . . and federal rules prevents the assumption that the legislature adopted our Rule 8(a)(1) with the judicial construction which had been placed upon . . . the federal counterpart." *Sutton*, 277 N.C. at 101, 176 S.E.2d at 165.  However, this is not to say that case law interpreting the federal and New York rules should be ignored.  "On the contrary, since the federal and, presumably, the New York rules are the source of NCRCP [North Carolina Rules of Civil Procedure], we will look to the decisions of those jurisdictions for enlightenment and guidance as we develop 'the philosophy of the new rules.'" *Id.*

{58}  As stated above, Rule 8(a) requires that a pleading "give[] sufficient notice of the events or transactions which produced the claim to enable the adverse party to *understand the nature of it and the basis for it . . . .*" *Sutton*, 277 N.C. at 104, 176 S.E.2d at 167 (emphasis added).  By requiring that the pleadings provide sufficient notice for a defendant to understand the nature and basis of a plaintiff's

claims, Rule 8 ensures that a proper defense can be presented. *See Barclay White Skanska, Inc.*, 262 Fed. Appx. at 563 (stating that while "notice pleading is designed to provide defendants with fair notice of the plaintiffs' claims and the grounds upon which those claims rest. . . . [A] complaint cannot be construed so liberally so as to deprive [a defendant] of notice.") (citations omitted). This is why many federal courts consider an argument at summary judgment supported by an alternative theory of recovery not pled in the complaint to be an entirely new claim. *See Cloaninger*, 555 F.3d at 336 (stating that because plaintiffs may not raise new claims after discovery without amending their complaint, the court would not allow plaintiffs to base his claim for malicious prosecution at summary judgment on a charge of involuntary commitment, when the complaint stated that the claim was based on a charge of resisting arrest).

{59}   In this case, Plaintiffs' Complaints allege that Defendants are responsible for collecting the Occupancy Tax because: (1) the counties' ordinances impose the responsibility of collection on Defendants, (Mecklenburg Compl. ¶¶ 24–25, Wake Compl. ¶¶ 26–27; Dare Compl. ¶¶ 26–27; Buncombe Compl. ¶¶ 34–35, 43), and (2) Defendants have collected the full amount of the Tax, but only remitted to Plaintiffs a portion of what was collected. (Mecklenburg Compl. ¶¶ 23–25, Wake Compl. ¶¶ 25–27; Dare Compl. ¶¶ 25–27; Buncombe Compl. ¶¶ 34–35, 43(d).)

{60}   Plaintiffs cite to many of the same allegations mentioned above as evidence that they properly alleged a theory of recovery based on contractual undertaking. However, the Court can not find any allegation within the Complaints that would provide sufficient notice to Defendants that Plaintiffs' claims were based on a theory that Defendants were liable for collection of the Tax because of the contracts Defendants entered into with the hotel providers. Accordingly, the Court concludes that Plaintiffs failed to provide "sufficient notice of the events or transactions which produced the claim to enable the adverse party to *understand the nature of it and the basis for it.*" *Sutton*, 277 N.C. at 104, 176 S.E.2d at 167 (emphasis added).

2.

## CONTRACTUAL UNDERTAKING

{61} Even if the Court were to consider Plaintiffs' contractual undertaking theory of recovery, it would also have to acknowledge that there is no legal support for such a theory in North Carolina's case law. Plaintiffs initially point the Court to *Williams v. Smith*, a North Carolina Court of Appeals case, where, in the context of plaintiff's negligence claim, the court stated that a "[d]uty may be imposed if one party undertakes to render services to another and the surrounding circumstances are such that the first party should recognize the necessity to exercise ordinary care to protect the other party or the other party's property . . . ." 149 N.C App. 855, 858, 561 S.E.2d 921, 923 (2002). However, in response to Defendants' Brief in Opposition to Plaintiffs' Motion for Summary Judgment, Plaintiffs qualify their reliance on *Williams*, by stating that the counties' "primary legal support comes from the language of the Enabling Legislation and Ordinances . . . ." (Pls.' Reply Supp. Mot. Summ. J. 15 n. 9.)

{62} Plaintiffs point to federal cases dealing with similar litigation concerning Defendants' responsibility for collecting taxes in other jurisdictions, the Court does not find those cases to be persuasive because they do not interpret the statutes, ordinances, and resolutions at issue in this action. Because Defendants are not liable under the applicable legislation and ordinances, and Plaintiffs have failed to provide any additional legal support for their contractual undertaking theory of recovery, Plaintiffs are not entitled to summary judgment.

{63} Accordingly, for the reasons stated above, the Court DENIES Plaintiffs' Motion based on a theory of contractual undertaking and Defendants' Motion is GRANTED.

D.

## COLLECTED BUT NOT REMITTED THEORY OF RECOVERY

{64} The premise of Plaintiffs' last theory of recovery is that Defendants have calculated and collected an Occupancy Tax based on the Sales Rate paid by consumers to Defendants, but only remitted to Plaintiffs an amount based on the

Discount Rate paid by Defendants to the hotel providers, thereby pocketing the difference. (Pls. Mem. Law Supp. Mot. Summ. J. 20–29.) Plaintiffs contend that Defendants are in a fiduciary or "trustee" like relationship with Plaintiffs, and thus, must remit all of the taxes they collect from the consumers. Defendants counter that Plaintiffs' argument fails because North Carolina does not recognize a "collected-but-not-remitted" theory of recovery. (Defs.' Br. in Opp. to Pls. Mot. Summ. J. 30.)

{65}    Plaintiffs first argue that the Court ruled in Plaintiffs' favor on their "collected-but-not-remitted" theory of recovery in its Order and Opinion on Defendants' Motion to Dismiss. (Pls. Mem. Law Supp. Mot. Summ. J. 20.) This, however, is a misinterpretation of the Court's Order and Opinion. *See generally Wake Cnt'y v. Hotels.com, LP*, 2007 NCBC 35 (N.C. Super. Ct. Nov. 19, 2007), http://www.ncbusinesscourt.net/opinions/112007%20Opinion%20for%20Webpage%20Hotels.pdf (order granting in part, and denying in part, Defendants' Motion to Dismiss).

{66}    In its Order and Opinion on Defendants' Motion to Dismiss, the Court held:

> On these facts, it does not matter whether (as Defendants urge) the reach of the Occupancy Tax is co-extensive with that of the [S]tate sales tax or whether Defendants 'operate' hotels. Instead, by (1) collecting the tax from consumers and then failing to remit the full amount to Plaintiffs, and (2) not filing returns as required by law, Defendants have not complied with the plain language of the Occupancy Tax (and the corresponding enabling acts) requiring them to account for and remit all such taxes.

*Id.* at ¶ 72. The Court then held "[t]hus, *at least at this stage of the case*, Plaintiffs have stated claims that would entitle them to relief." *Id.* at ¶ 73 (emphasis added). The Court's Order and Opinion on Defendants' Motion to Dismiss only provides the Court's determination regarding the adequacy of Plaintiffs' pleadings under a Rule 12(b)(6) standard of review, and does not pass judgment on the ultimate merits of Plaintiffs' theory of recovery. Accordingly, the Court's conclusions in its previous Order and Opinion do not answer the question of whether Plaintiffs have advanced a viable theory of recovery under North Carolina law.

{67}    In support of their Motion for Summary Judgment, Plaintiffs direct the Court to *City of Rome v. Hotels.com*, *Expedia, Inc. v. City of Columbus*, and *City of Gallup v. Hotels.com, L.P.*, three cases that dealt with similar questions of tax liability in other jurisdictions. The Court first notes that none of the cases cited by Plaintiffs are from North Carolina, and at best, these cases can only serve as persuasive authority. In addition, as discussed below, none of these cases help Plaintiffs' position because they rely on statutory language that has not been adopted in North Carolina.

{68}    In *City of Rome*, defendants argued in their motion to dismiss that they were not liable to plaintiffs for excise taxes levied on the rental of rooms, lodgings, and accommodations. No. 4:05-CV-249-HLM, 2006 U.S. Dist. LEXIS 56369, at *14–15 (N.D. Ga. May 8, 2006). The court concluded that "[t]he person or entity collecting the tax from the hotel or motel guest [was required to] remit the tax to the governing authority imposing the tax . . . ." *Id.* at *15. The court then held that "[d]efendants are the entities actually collecting the excise taxes from the hotel guests and, *pursuant to O.C.G.A. § 48-13-51(a)(1)(B)([i])*, those taxes actually collected must be remitted to Plaintiffs." *Id.* at *16. The court's decision in *City of Rome*, was a result of its conclusion that O.C.G.A. § 48-13-51(a)(1)(B)([i]) required those who collected the tax to remit what they collected to the taxing authorities. However, unlike the statute in *City of Rome*, in this case, Plaintiffs' authorizing statutes do not place the same collection responsibilities on the Defendants. Accordingly, the Court finds the holding in *City of Rome* unpersuasive.

{69}    Similarly, in *Expedia, Inc. v. City of Columbus*, plaintiff argued that the trial court had erred in concluding: (1) that plaintiff was required to collect hotel occupancy taxes under its agreements with hotel providers, and (2) that the enabling statute (O.C.G.A. § 48-13-51(a)(1)(B)(i)), required any entity collecting the tax to remit what was collected to the defendant. *Expedia, Inc. v. City of Columbus*, 681 S.E.2d 122, 126–28 (Ga. Sup. Ct. 2009). The Georgia Supreme Court held that, contrary to plaintiff's argument, the trial court had not concluded as a matter of law that plaintiff was responsible for collecting the taxes, but rather, found as a matter

of fact, that plaintiff had contracted for the right to collect taxes on the hotels' behalf. *Id.* at 126–27. The court then cited *City of Rome*, in support of its holding that under the enabling statute, plaintiff was required to pay the taxes to defendant because they were the entity collecting the taxes. *Id.* at 127.

{70} Like the ruling in *City of Rome*, the holding in *City of Columbus*, does not provide this Court with any legal support for the proposition that Defendants can be held liable under a "collected-but-not-remitted" theory of recovery. As the Georgia Supreme Court stated in its opinion, the trial court *found as a matter of fact*, that (1) plaintiff had contracted for the right to collect taxes on behalf of the City's hotels, and (2) that "there was nothing in the Enabling Statute or City ordinance which prohibited Expedia from contracting with City hotels to collect the customer's tax on the hotel's behalf." *Id.* Because the court did not conclude that plaintiff was responsible for collecting the taxes *as a matter of law*, but rather, that plaintiff had contracted through private agreement for the ability to collect the customer's tax, the case does not provide legal support for Plaintiffs' theory of recovery.

{71} In addition, as was the case in *City of Rome*, the court's reasoning in *City of Columbus* is inapplicable because the court's conclusion that "the Enabling Statute unequivocally requires the remission of taxes by the 'entity' that purports to collect them," is based on an interpretation of O.C.G.A. § 48-13-51(a)(1)(B)(i). *Id.* As the Court has previously determined, North Carolina's authorizing statutes do not place the same responsibilities for collection as those adopted by Georgia. Thus, the Court finds *City of Columbus* equally unpersuasive.

{72} Lastly, in *City of Gallup v. Hotels.com, L.P.*, the court faced many of the same arguments previously mentioned in *City of Rome* and *City of Columbus*. In *City of Gallup*, the United States District Court for the District of New Mexico held that "*if* Defendants are collecting a lodging tax from the vendees on behalf of the City *and* acting as trustees of said money, the Defendants *could* be liable to the City, regardless of whether or not they are vendors as provided in the Ordinance." *City of Gallop v. Hotels.com*, No. 06-0549-JC, 2007 U.S. Dist. LEXIS 86720, at *11

(January 30, 2007) (citing *City of Rome*, 2006 U.S. Dist. LEXIS 56369, at \*15–16). However, this holding relies on the same reasoning discredited above in the Court's discussion of *City of Rome*. By relying on *City of Rome*, the court's conclusion in *City of Gallup* is, strangely enough, premised upon a Georgia enabling statute that requires those who collect the tax to remit what is collected to the taxing authorities. Again, any reliance on the language of the Georgia statutes is inappropriate in this case because North Carolina's authorizing statutes do not impose the same responsibilities on Defendants. Thus, the holding in *City of Gallup* is also unpersuasive.

{73}     Plaintiffs' have been unable to direct this Court to any binding legal precedent to support a "collected-but-not-remitted" theory of recovery. Accordingly, the Court DENIES Plaintiffs' Motion as to their "collected-but-not-remitted" theory of recovery, and GRANTS Defendants' Motion as to this theory of recovery.

{74}     For the reasons stated above, the Court hereby DISMISSES, with prejudice, the following claims: (1) Wake's claims for declaratory judgment/injunction, violation of room occupancy tax ordinance, and claim for statutory penalties; (2) Mecklenburg's claims for declaratory judgment/injunction, violation of room occupancy tax ordinance, and claim for statutory penalties; (3) Dare's claims for declaratory judgment/injunction, violation of room occupancy tax ordinance, and claim for statutory penalties; and (4) Buncombe's claims for declaratory judgment.

E.

DEMAND FOR ACCOUNTING

{75}     Plaintiffs' Demand for Accounting is based on the assumption that Defendants are under a legal obligation to collect and remit the Occupancy Tax under the counties' Occupancy Tax ordinances and resolutions. (Mecklenburg Compl. ¶ 67; Wake Compl. ¶ 64; Dare Compl. ¶ 65; Buncombe Compl. ¶ 46.) For the reasons discussed above, the Court does not conclude that Defendants are legally obligated to collect the occupancy tax under the counties' authorizing statutes, ordinances, or resolutions. Accordingly, Defendants' Motion is GRANTED,

and Plaintiffs' Motion is DENIED as to Plaintiffs' Demand for Accounting. Plaintiffs' claim of Demand for Accounting is therefore DISMISSED, with prejudice.

F.

AGENCY

{76}    Mecklenburg, Wake, and Dare's claim for Agency is premised on the theory that Defendants were agents of taxable establishments and also "operators of business subject to the Tax." (Mecklenburg Compl. ¶¶ 79–80; Wake Compl. ¶¶ 74–75; Dare Compl. ¶¶ 76–77.)

{77}    The "'[t]wo essential elements of an agency relationship are: (1) the authority of the agent to act on behalf of the principal, and (2) the principal's control over the agent.'" *Hospira Inc. v. AlphaGray Corp.*, 194 N.C. App. 695, 700, 671 S.E.2d 7, 11 (2009) (quoting *State v. Weaver*, 359 N.C. 246, 258, 607 S.E.2d 599, 606 (2005)). Defendants argue in their Motion that there was no intent to create an agency relationship between the Defendants and the hotels with whom they dealt, and in fact, all of the contracts between Defendants and the hotels disclaim the existence of an agency relationship. Plaintiffs only response to Defendants' argument is that "the [c]ounties have demonstrated in their own summary judgment papers and herein, [that] Defendants are liable for the unpaid occupancy taxes." (Pls.' Mem. Opp. Defs.' Mot. Summ. J. 38.)

{78}    Defendants' Motion demonstrates to the Court that both an essential element of Plaintiffs' claims does not exist and that Plaintiffs cannot produce any evidence in support of their claim for Agency. In addition, Plaintiffs have not provided any rebuttal to Defendants' Motion that would show how the hotels that contracted with Defendants had control over Defendants as their agents. Accordingly, Defendants have carried their burden in demonstrating that the absence of a triable fact exists and that Defendants are entitled to Summary Judgment on Plaintiffs' agency claim. *See Strickland v. Lawrence*, 176 N.C. App. 656, 661, 627 S.E.2d 301, 305. Therefore, the Court GRANTS Defendants' Motion, and DENIES Plaintiffs' Motion as to Plaintiffs' agency claims. Plaintiffs' claims for agency are therefore DISMISSED, with prejudice.

G.

## MECKLENBURG'S CLAIM FOR CONVERSION

{79}    The only remaining claim for conversion before the Court is brought by Mecklenburg.  Mecklenburg's Motion did not request that summary judgment be entered on its claim for conversion.  Therefore only Defendant's Motion on Mecklenburg's claim for conversion is before the Court.  Defendants argue that Mecklenburg's claim must fail because: (1) Mecklenburg has no ownership interest in the allegedly converted funds, (2) Mecklenburg has no standing to assert a claim for conversion based on a theory that the Defendants over-charged consumers for the taxes owed to Plaintiffs, (3) the wrongful deprivation of money can not support a conversion claim, and (4) the Defendants did not over-collect and pocket taxes. Because the Court concludes below that the funds which Plaintiffs alleged were converted can not be the subject of a conversion claim, the Court does not reach Defendants' first, second, or fourth arguments.

{80}    The North Carolina Supreme Court has held that "[t]he tort of conversion is well defined as 'an unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another, to the alteration of their condition or the exclusion of an owner's rights.'" *Variety Wholesalers, Inc. v. Salem Logistics Traffic Servs., LLC*, ___ N.C. ___, ___, 723 S.E.2d 744, 747 (N.C. 2012) (quoting *Peed v. Burleson's, Inc.*, 244 N.C. 437, 439, 94 S.E.2d 351, 353 (1956)) (alteration in original).  Accordingly, there are "two essential elements of a conversion claim: ownership in the plaintiff and wrongful possession or conversion by the defendant." *Id.* (citing *Gadson v. Toney*, 69 N.C. App. 244, 246, 316 S.E.2d 320, 321–22 (1984)).

{81}    When a plaintiff has alleged the wrongful possession of money, courts have held that "the general rule is that 'money may be the subject of an action for conversion *only* when it is capable of being identified and described.'" *Id.* at ___, 723 S.E.2d at 750 (quoting *Alderman v. Inmar Enters., Inc.*, 201 F. Supp. 2d 532, 548 (M.D.N.C. 2002)) (emphasis in original).  Some federal courts within North Carolina have held that "[i]n order to be 'identified and describe [sic] as a specific chattel,' the

. . . rule is that the money must be segregated from other funds or kept in a separate bank account and not commingled with the alleged convertor's other funds." *Alderman*, 201 F. Supp. 2d at 548 (quoting *Cananwill, Inc. v. EMAR Group*, 250 B.R. 533, 549–50 (1999)). However, the North Carolina Supreme Court's recent ruling in *Variety Wholesalers, Inc.*, appears to have rejected a strict interpretation of this requirement. *See Variety Wholesalers, Inc.*, ___ N.C. at ___, 723 S.E.2d at 750–51.

{82}    In *Variety Wholesalers, Inc.*, the Court was asked to determine whether summary judgment was appropriate to resolve the question of whether a contract entered into by the plaintiff and the defendant sufficiently retained for plaintiff an ownership interest in funds sent to the defendant for payment to a third party. *Id.* at ___, 723 S.E.2d at 747–48. The plaintiff in *Variety Wholesalers, Inc.*, had allegedly entered into a contract with the defendant that provided a process through which plaintiff would send funds to defendant for payment to a third party that was providing services for plaintiff. *Id.* The plaintiff was able to show precisely how much had been sent, from which accounts the funds originated, and to which accounts the funds were transferred. *Id.* at ___, 723 S.E.2d at 751. While the Court concluded that the question of contractual intent was an issue for the jury to decide, and thus inappropriate for summary judgment, it also addressed defendant's secondary argument that plaintiff's claim must fail because of the anti-commingling standard enunciated above in *Alderman*. *Id.* at ___, 723 S.E.2d at 750–51.

{83}    The *Variety Wholesalers, Inc.* Court noted that "'[t]he requirement that there be earmarked money or specific money capable of identification before there can be a conversion has been complicated as a result of the evolution of our economic system.'" *Id.* at ___, 723 S.E.2d at 750 (quoting *Campbell v. Naman's Catering, Inc.*, 842 So. 2d 654, 659–60 (Ala. 2002)). The Court then held that "*[i]n the context of this conversion claim*, we conclude that funds transferred electronically may be sufficiently identified through evidence of the specific source, specific amount, and specific destination of the funds in question." *Id.* at ___, 723 S.E.2d at 750–51 (emphasis added).

{84}     While the Court's ruling in *Variety Wholesalers, Inc.*, liberalizes the standard for determining whether goods and personal chattels have been sufficiently "identified and described," the Court's holding also appears to be restricted to the facts of the case. *See id.* at ___, 723 S.E.2d at 750–51 ("*[i]n the context of this conversion claim*, we conclude that funds transferred electronically may be sufficiently identified through evidence of the specific source, specific amount, and specific destination of the funds in question." (emphasis added)). Furthermore, while the Court indicated that the evolution of our economic system has complicated the identification requirement, a claim for conversion is still at its essence based on the wrongful deprivation of "goods or personal chattel" from their owner, and thus the Court could not have intended for its ruling to allow a claim based on general indebtedness to be sufficient to support a claim of conversion.

{85}     In response to Defendants' argument that the funds sought by Plaintiffs can not be sufficiently identified, Plaintiffs argue that "[h]ere, the 'money' that is the subject of Mecklenburg's conversion claim is capable of being specifically identified – the difference between the amount of occupancy taxes due on the Sale Price versus the Net Rate." (Pls.' Mem. Opp. Defs.' Mot. Summ. J. 37.)  Plaintiffs do not identify, nor direct the Court to any evidence that identifies: (1) the accounts from which the allegedly converted funds were derived, (2) the accounts to which the funds were transferred, or (3) the specific amounts that were sent and received.

{86}     Unlike the facts in *Variety Wholesalers, Inc.*, at its essence Plaintiffs' claim for conversion is based on the theory that they are owed the taxes paid by consumers to Defendants, collected by Defendants, but not remitted to Plaintiffs. Plaintiffs can not identify any of the funds with particularity, but only that they have not been paid all they are owed. This theory of recovery is insufficient to meet either the historical identification requirement or the new standard adopted in *Variety Wholesalers, Inc.* Accordingly, the Court concludes that the money at issue in this action is not "capable of being identified and described," and thus Defendants' Motion must be GRANTED.  Mecklenburg's claim for conversion is hereby DISMISSED, with prejudice.

H.

CONSTRUCTIVE TRUST

{87}   Lastly, Plaintiffs assert claims for constructive trust, (Wake Compl. ¶¶ 58–62; Dare Compl. ¶¶ 59–63; Mecklenburg Compl. ¶¶ 61–65), which in reality, are claims for unjust enrichment, as a constructive trust is simply a "fiction of equity, brought into operation to prevent *unjust enrichment* through the breach of some duty or other wrongdoing." *Wilson v. Crab Orchard Dev. Co.*, 276 N.C. 198, 211, 171 S.E.2d 873, 882 (1970) (emphasis added).

{88}   A constructive trust

> is a duty, or relationship, imposed by courts of equity to prevent the unjust enrichment of the holder of title to, or of an interest in, property which such holder acquired through fraud, breach of duty or some other circumstance making it inequitable for him to retain it against the claim of the beneficiary of the constructive trust.

*Variety Wholesalers, Inc. v. Salem Logistics Traffic Servs., LLC*, at ___, 723 S.E.2d at 751(quoting *Wilson*, 276 N.C. at 211, 171 S.E.2d at 882). While "a fiduciary relationship, [is] generally the basis for constructive trust claims, [it] is not strictly required. In the absence of such a relationship, [a plaintiff] faces the difficult task of proving 'some other circumstance making it inequitable' for [a defendant] to possess the funds . . . ." *Id.* at ___, 723 S.E.2d at 752.

{89}   In this case, Plaintiffs needed to put forth some evidence of fraud, breach of duty, or other circumstance making it inequitable for Defendants to keep the funds that Plaintiffs claim were wrongfully obtained. *See id.* at ___, 723 S.E.2d at 751. However, because the Court concluded above that: (1) Defendants are not obligated to collect the Occupancy Tax under any of the counties' ordinances or resolutions, (2) Defendants are not liable under a contractual undertaking or "collected-but-not-remitted" theory of recovery, and (3) Mecklenburg's claim for conversion should be dismissed as a matter of law, the Court can identify no wrongdoing upon which to premise a constructive trust. Accordingly, the Court GRANTS Defendants' Motion, and DENIES Plaintiffs' Motion as to Plaintiffs'

remedy for constructive trust.   Plaintiffs' remedy is therefore DISMISSED, with prejudice.

## V.

### CONCLUSION

{90}    For the reasons stated above Defendants' Motion for Summary Judgment is GRANTED.  Plaintiffs' Motion for Summary Judgment is DENIED. Wake, Mecklenburg, and Dare's claims for declaratory judgment/injunction, violation of room occupancy tax ordinance, statutory penalties, unjust enrichment/imposition of constructive trust, demand for accounting, and agency are hereby DISMISSED, with prejudice; Buncombe's claims for declaratory judgment are hereby DISMISSED, with prejudice; and Mecklenburg's claim for conversion is DISMISSED, with prejudice.

SO ORDERED, this the 19th day of December 2012.